IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** § | | |
| § | | |
| *Plaintiff* § | | |
| § | | |
| vs. § | | Civil Action No. 4:19-cv-00658 |
| § | | |
| **WILLIAM MARSH RICE UNIVERSITY** § | | |
| d/b/a **RICE UNIVERSITY**, § | | |
| **EMILY GARZA**, as agent for Rice § | | |
| Rice University, and **DONALD OSTDIEK**, § | | |
| as agent for Rice University**,** § | | |
| § | | |
| *Defendants.* § | | |

## MOTION TO PROCEED UNDER PSEUDONYM, AND
## FOR PROTECTIVE ORDER

Plaintiff John Doe respectfully requests leave to proceed in the above-captioned matter under the pseudonym "John Doe." The circumstances of this case are such that requiring the Plaintiff to proceed under his legal name would disclose information of the utmost personal intimacy, including embarrassing health information and education records protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34 CFR Part 99. Plaintiff makes this request in order to protect himself from harassment, ridicule and personal embarrassment, and would further state to the Court, as follows:

### I.
### RELEVANT FACTUAL BACKGROUND

Plaintiff John Doe has brought this case against Rice University, Donald Ostdiek, and Emily Garza (hereinafter, collectively, the "Defendants"), alleging that Defendants treated Plaintiff in a manner inconsistent with 20 U.S.C. § 1681, *et seq*. ("Title IX"), federal and state law,

and Rice University's policies and procedures, stripping him of his rights to a fair and just investigation and adjudication process.

John Doe (an 18 year old freshman football player) and Jane Roe (a junior student) at Rice University began an adult, consensual sexual relationship during the Fall 2017 semester. Prior to having sexual intercourse, John Doe explained to Jane Roe that he contracted the sexually transmitted infection ("STI") herpes while in high school, which Jane Roe admits. Thereafter, Jane Roe and John Doe engaged in several instances of unprotected, consensual sexual intercourse. The couple ended their relationship after approximately five weeks. In December 2017, Jane Roe was diagnosed with herpes, and thereafter she began a malicious campaign to prosecute John Doe for allegedly committing assault causing bodily injury and sexual misconduct/ dating violence.

In February 2018, the Harris County D.A. declined to press any charges against John Doe in light of Jane Roe's misrepresentations to investigators, including: (a) Jane Roe's intentional withholding of the fact that John Doe, indeed, informed her of his herpes infection prior to engaging in sexual intercourse; and (b) false claims that she had been tested for herpes *"every six months,"* which was belied by her medical records, showing that she had never been tested for herpes prior to December 2017. Unsatisfied with the D.A.'s declination to prosecute, Jane Roe filed her baseless accusations of sexual misconduct/ dating violence in a friendlier forum—*the Title IX Office of Rice University.*

Thereafter, Defendants conducted a discriminatory, inadequate and impartial investigation, and Defendants Ostdiek and Garza, in particular, showed egregious bias against John Doe during the process. John Doe was barred from presenting relevant witness testimony in his defense, barred from cross-examining his accuser, and denied the opportunity to be represented by his attorney at any point in the proceedings. Furthermore, John Doe was held to an inexplicable, unwritten, and

archaic standard of student conduct that was completely detached from contemporary concepts of gender equality and an affront to female modernity.

Ultimately, Defendants erroneously determined that John Doe's *"failure to disclose this information to a sexual partner, and then subsequently engage in unprotected sex, was a reckless action from which mental or bodily harm could result to another person,"* in violation of Section II(B)(1)(a) of the Student Code of Conduct, which reads, in pertinent part:

1.  **University Violations (Class I)**

    a.  *Mental or Bodily Harm, Reckless Action or Disregard: Intentionally inflicting or attempting to inflict mental or bodily harm on any person, including on the charged student; taking any reckless action, or showing reckless disregard, from which mental or bodily harm could result to any person, including the charged student.*

On April 17, 2018, Defendant Garza sanctioned John Doe with suspension from Rice University until the Spring 2019 semester. Furthermore, Defendant Garza determined that, should John Doe return for the Spring 2019 semester, he would be only be allowed on campus for academic purposes; John Doe may not participate in any college-related activities, or attend any event where alcohol is served or consumed; and this restriction would extend to parties and gatherings both on and off campus, and any Rice-sponsored event where alcohol is consumed. Defendant Garza determined that she would not entertain an application from John Doe to lift these restrictions until June 1, 2019, at the very earliest. During the probationary period, described above, John Doe would be required to attend regular meetings with Henry Cash, a Wellbeing Advisor.

Among other discriminatory conduct, Defendants indicated a bias against male students when Defendants investigated and adjudicated the sexual misconduct/ dating violence allegations against John Doe in a manner and degree materially different than their investigation and

adjudication of John Doe's evidence in defense of such allegations. While John Doe was treated as a violent criminal from the outset of the investigation, banned from all Rice University properties and evicted from his dormitory within 24 hours, Jane Roe had no restrictions of any variety.

In his Original Complaint, filed contemporaneously with this Motion, John Doe has asserted claims under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) and under state law, including claims for breach of contract.

Plaintiff now seeks an Order from this honorable Court, permitting him to proceed anonymously in this proceeding, using the pseudonym "John Doe." Given the nature of the claims presented and the potential for public and media attention on such matters, Plaintiff fears threats and reprisals from the public as a result of his lawsuit. Plaintiff believes that his need for anonymity outweighs any prejudice to the public's interest in knowing his legal name.

## II.
### FIFTH CIRCUIT LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party's pleadings should identify the parties to a suit. F.R.C.P. 10(a). Nevertheless, the Fifth Circuit has allowed parties to proceed under a pseudonym in particular circumstances. *See Southern Methodist Univ. Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979). There is no hard and fast rule for determining when a party may be allowed to proceed under a pseudonym in the Fifth Circuit; rather, courts "must decide whether the considerations calling for the maintenance of a party's privacy outweigh the customary and constitutionally-based presumption of openness in judicial proceedings." *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

When evaluating a motion to proceed under a pseudonym, courts should look to: "(1) whether the plaintiff seeking anonymity is suing to challenge governmental activity; (2) whether

prosecution of the suit compels the plaintiff to disclose information of the utmost intimacy; and (3) whether the plaintiff is compelled to admit his intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* at 185. In addition to these factors, the Fifth Circuit also considers the "relevant facts and circumstances of a particular case," including issues such as whether a plaintiff may face a hostile public reaction, and whether the decision to proceed anonymously will have a prejudicial impact on the defending parties. *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007).

In Title IX cases, federal courts have generally permitted plaintiffs to use pseudonyms, particularly in cases involving alleged sexual assaults. *See Doe v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) (citing cases and finding that "[c]ourts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects."). For example, in *Roe v. St. Louis Univ.*, the court permitted the use of a pseudonym in a Title IX lawsuit because rape is a "personal matter of the utmost intimacy." 2009 WL 910738, at *5 (E.D. Mo. Apr. 2, 2009); *see also Doe v. Blue Cross & Blue Shield*, 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties . . . ."); *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) (when denying the right to proceed anonymously, court noted that plaintiff was not, among other things, a minor or rape victim or likely target of retaliation). As here, courts have also upheld the anonymity of plaintiffs who are the alleged perpetrators suing a university following disposition of a charges of sexual assault. *See Doe v. Univ. of Montana*, No. CV 12-77-M-DLC, 2012 WL 2416481, at *5 (D. Mont., June 26, 2012); *Doe v. Texas A&M University, et al.*, 4:17-cv-02500 (S.D. Tex. 2017).

In the case *sub judice*, application of the standards expressed herein and elsewhere likewise justify the use of pseudonyms by Plaintiff in this case, which arises from the highly-inflammatory and intimate arena of sexual misconduct claims.

### III.
### PLAINTIFF SHOULD BE PERMITTED TO PROCEED AS JOHN DOE IN THIS HIGHLY SENSITIVE AND VOLATILE MATTER

A.   THIS LAWSUIT INVOLVES HIGHLY INTIMATE INFORMATION

Plaintiff has presented claims regarding a highly personal and intimate matter, including, but not limited to, his prior sexual experiences with a fellow student at Rice University and false claims of sexual misconduct/ dating violence made against him. This case will likely involve pleadings that describe, in graphic detail, Plaintiff's sexual experiences with Jane Roe, the parties' medical diagnoses, and the effect that these claims and Defendants' responses have had on his life, including his academic record and subsequent athletic career. As a result, pleadings will address not only sexual and medical history, but also the impact that this prolonged situation has had on John Doe's educational and professional careers that would otherwise be subject to protection under federal privacy law, as well as Plaintiff's struggles to recover both from the false accusations and Rice University's deplorable response.

Given that Plaintiff has been falsely accused of a heinous crime, and considering the omnipresent and insufferable judgment of social media/ internet bullying, Plaintiff's concerns regarding the potential impact of his identity becoming open to the pubic are entirely understandable. As noted, above, the Fifth Circuit has repeatedly held that allegations of sexual misconduct warrant anonymity, particularly in the context of Title IX. *See Doe v. El Paso County Hosp. Dist.*, 2015 WL 1507840, at *4 (W.D. Tex., April 1, 2015) (collecting cases); *see also Cabrera*, 307 F.R.D. at 5 (collecting cases). As testimony at trial will certainly include descriptions

of sexual acts, nudity, and other graphic details, such information can and should constitute matters of "utmost intimacy." *Id*.

Moreover, where a victim alleges continued mental and emotional suffering, as Plaintiff John Doe does, here, such circumstances often result in the victim being subjected to not only the disclosure of personal information, but also "outright humiliation." *Id*. Plaintiff, quite understandably, continues to battle with the psychological damage of the heinous allegations, sham investigation, and discriminatory misconduct, and public disclosure of the intimate details of his sexual past and mental health will only further such harm. *Id*. at 5. Accordingly, even though his case does not involve government officials and/or illicit conduct, "the alleged intrusion of Plaintiff's privacy . . . becomes no less traumatizing." *Id*. Because the details of sexual conduct and mental and sexual health treatment are so sensitive, and the public dissemination of such details *so harmful*, courts have also held that public policy interests weigh in favor of considering sexual misconduct allegations to be a matter of utmost intimacy. *See Cabrera*, 307 F.R.D. at 6.

Similarly, those accused of sexual assault, particularly in the arena of Title IX claims, face the same or similar issues in publicizing their true identities. Publication of intimate sexual details, including, but not limited to, false claims of sexual misconduct and embarrassing medical diagnoses, would cause a furtherance of the harm that the litigant is seeking to avoid and/or overturn through the filing of a federal action. Furthermore, disclosure of the parties' names would undermine the Rice University disciplinary process. In fact, numerous courts around the country have permitted plaintiffs alleging similar claims against colleges and universities to proceed anonymously. *See, e.g.*, *John Doe v. Columbia University and Trustees of Columbia University,* 2014 WL 6471520 (S.D.N.Y. 2014); *Doe v. Washington & Lee Univ.*, 2015 WL 4647996 (W.D. Va., Aug. 5, 2015); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Doe v. Univ.*

*of Massachusetts-Amherst*, 2015 WL 4306521 (D. Mass. 2015); *Doe v. Univ. of S. Florida Bd. of Trustees*, 2015 WL 3453753 (M.D. Fla. 2015); *Doe v. Salisbury Univ.*, 2015 WL 3478134 (D. Md. 2015); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," citing *Does I–XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068–69 (9th Cir. 2000)). Similarly, here, Plaintiff should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of sexual assault and other misconduct.

**B.    DISCLOSURE OF PLAINTIFF'S IDENTITY WOULD RESULT IN SIGNIFICANT HARM**

In addition, Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identify would result in significant harm to Plaintiff, the exact type which he seeks to remedy by the commencement of this lawsuit. *See Doe v. Colgate Univ.,* 2016 WL 1448829, at *3 (N.D.N.Y., Apr. 12, 2016) ("[s]hould Plaintiff prevail in providing that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges."). Accordingly, forcing Plaintiff to reveal his identity would not further any aspect of the litigation and "instead poses a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.*, 2016 WL 144829, at *3.

Thus, even if Plaintiff were ultimately exonerated and his records expunged, the disclosure of his name would, nonetheless, significantly hinder his ability to pursue future career and educational endeavors, including, but not limited to, professional sports employment and

graduate studies, as any entity or employer would undoubtedly have access to the records related to this matter and discover that Plaintiff was falsely accused of sexual misconduct. It is widely recognized that the likelihood of acceptance as a transfer student to an elite undergraduate program, or to a top tier graduate program, is significantly reduced in light of the high number of applicants and stiff competition, let alone the social stigma associated with being found responsible and sanctioned for "sexual misconduct"—regardless of whether the decision is ultimately overturned as a result of litigation.

Based on the foregoing, Plaintiff should be permitted to proceed under a pseudonym, as requiring him to reveal his identity would result in significant harm to Plaintiff, including the exact damages he seeks to remedy in this matter; namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

C.  **DEFENDANTS WOULD SUFFER NO PREJUDICE BY ALLOWING PLAINTIFF TO PROCEED UNDER A PSEUDONYM**

Plaintiff should, furthermore, be permitted to proceed anonymously in this matter because Defendants will not be prejudiced in any way by proceeding against an anonymous party. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, Defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, Defendants are already aware of Plaintiff's true identity by virtue of having allegedly performed an investigation of this matter. As such, there is no doubt that Defendants will have an unobstructed opportunity to conduct full discovery, present their defenses, and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously in this matter. Therefore, Plaintiff must be permitted to proceed anonymously in this action, as revealing his name will cause significant prejudice to Plaintiff but will not hinder Defendants in any way.

**D.     THERE IS LITTLE, IF ANY, PUBLIC INTEREST IN PLAINTIFF'S IDENTITY**

Plaintiff should also be permitted to proceed in this action anonymously because the public does not have a strong interest in knowing his identity. Considering the purely legal nature of the claims presented (*i.e.*, Defendants violated Plaintiff's right to due process, in violation of Title IX and other federal and/or state laws), there is a weak, if any, public interest in learning Plaintiff's identity as an individual. The public's interest in this matter would not be furthered by disclosing Plaintiff's identity, as his challenges to Rice University's biased and unfair investigatory process concerns a larger association than the interest of an individual plaintiff; it affects the male student population at Rice University as a whole. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006). Furthermore, shielding Plaintiff's identity will not, in this case, meaningfully limit the public's ability to consider the important issues raised by this case. There is nothing about the Plaintiff's identity that makes it "critical to the working of justice to reveal those identities." *See, e.g.*, *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F.Supp.3d 990 (N.D. Cal. 2015). The nature of the Internet today is such that any plaintiff's identity is readily accessible via a simple online search; thus, courts must be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious and unfounded sexual misconduct allegations, such as here.

Further, there is no doubt that "cases stemming from investigations of sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both the plaintiffs in these cases and their accusers." *Doe v. Colgate Univ.*, 2016 WL 1448829, at *2 (N.D.N.Y., Apr. 12, 2016); s*ee also Doe v. Brown*, 2016 WL 715794, at * 1 (D.R.I., Feb. 22, 2016) ("This case concerns an issue that has been the subject

of increasing attention and controversy, particularly in academia, and which has garnered much recent media and scholarly commentary.").

Here, if Plaintiff were required to reveal his name, even if Plaintiff were to succeed on his claims against Defendants, the public's access to his identity would result in further damage to his future educational and career endeavors, resulting in additional mental, emotional and psychological harm, which are among the very harms which he seeks to remedy in this action. As such, "protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected." *Doe v. Colgate Univ.,* 2016 WL 1448829, at *2 (N.D.N.Y., Apr. 12, 2016).

Based on the foregoing, and in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of Defendants and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and his attorneys are prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## IV.
## CONCLUSION

For these reasons and such other reasons as may be just and proper to this Court, Plaintiff John Doe respectfully requests that his *ex parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

Respectfully submitted.

/s/Susan E. Hutchison
SUSAN E. HUTCHISON
Texas Bar No. 10354100
sehservice@hsjustice.com

J. ROBERT HUDSON, JR.
Texas Bar No. 24094736
jr@hsjustice.com

HUTCHISON & STOY, PLLC
505 Pecan Street, Suite 101
Fort Worth, Texas 76102
T: (817) 820-0100
F: (817) 820-0111

**ATTORNEYS FOR PLAINTIFF**