IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-02985 |
| | § | |
| WILLIAM MARSH RICE | § | |
| UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT WILLIAM MARSH RICE UNIVERSITY'S
## MOTION FOR FINAL SUMMARY JUDGMENT

The investigation and adjudication of alleged misconduct of Plaintiff John Doe by the office of Student Judicial Programs ("SJP") of Defendant William Marsh Rice University were gender neutral. No evidence creates a genuine factual dispute that they were not, or shows any damage to Doe. His claims for Title IX gender discrimination and breach of unidentified terms in unidentified "express and/or implied contracts" should be dismissed.

## NATURE AND STAGE OF PROCEEDING

Rice student Jane Roe ("Roe") complained to SJP that fellow-student Doe failed to disclose his herpes diagnosis to her before engaging in consensual unprotected sex. SJP found no dating violence, but disciplined Doe for insufficient disclosure—a reckless action that could harm another. Doe sued in the Eastern District of Texas, alleging Rice violated Title IX and breached "express and/or implied contracts" requiring "fairness." Rice denies gender influenced its actions, that contracts with Doe existed, that they were breach even if they did, and that Doe was damaged. Venue was transferred in August 2020. Discovery is closed. Trial is in May.

1

## ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

The issue is whether genuine factual disputes exist that gender discrimination by Rice harmed Doe. *See* FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Love v. Chase Manhattan Mart. Corp.*, 546 F. Supp. 2d 368, 369–70 (N.D. Tex. 2008). Rice demonstrates below they do not, including by showing Doe "cannot produce admissible evidence to support" that there are. FED. R. CIV. P. 56(c)(1)(B); *see also Love*, 546 F. Supp. 2d at 370 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Doe "must do more than merely show that there is some metaphysical doubt as to the material facts." *Love*, 546 F. Supp. 2d at 370 (citing *Matsushita hike. Indus. Co., Ltd. v. Xenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Because "speculation, improbable inferences, or unsubstantiated assertions" are insufficient, he cannot. *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015).

## SUMMARY OF THE ARGUMENT

Discovery is closed. Doe's allegations a "sham" investigation motivated by "anti-male discriminatory bias" resulted in an "erroneous outcome," employed "archaic notions of the roles of men and women," and "selectively enforced" policies against him—remain mere *allegations*. *See, e.g.*, Original Complaint ("Compl.") (Dkt. 1), ¶¶ 17, 97. No evidence supports of any of them. Even if it did, Doe was not suspended or expelled, and never produced damage computations or supporting documents due—by Court order—*last February*. With no evidence of discrimination or damages, Doe has no claims.

Doe was a Freshman football scholarship athlete in Fall 2017. Dkt 1, ¶¶ 41, 43. He was diagnosed with herpes in high school, contracted chlamydia from one Rice student, and began a brief relationship with another, Jane Roe. *Id.*, ¶¶ 44, 45. The relationship included multiple unprotected sexual encounters. It ended before Christmas. *Id.*, ¶¶ 44, 46. The morning after their last sexual encounter on December 14, Roe texted Doe that she was afraid she had contracted herpes from him. Garza Dec., Ex. 4, p. 1. Doe's responses confirmed he had herpes, knew it, that it was a condition that "never goes away," and did not tell Roe before having unprotected sex because "[he] didn't think about" it. *See id.*, pp. 2-8.

Roe contacted Rice's Title IX office the next day, eventually filing both criminal assault charges against Doe, and when those charges were declined, pursuing a complaint against him through SJP. Garza Dec., Exs. 2-4. SJP emailed Doe the day after receiving Roe's comprehensive written statements forbidding contact with her, scheduling a meeting with him the next day, and asking for confirmation of both receipt and attendance. Doe's lawyer called instead to say he wasn't coming. Doe only responded when that failed, asking—by email—to reschedule less than an hour before the meeting was to start. *Id.*, ¶ 11 & Exs. 6, 7.[2] The meeting was ultimately delayed until March 7. *See id.*, Ex. 13.

---

[1] The Declarations of Emily Garza, Allison Vogt, Rick Mello, and Terry Kernell are attached in support of this motion as Exhibits A, B, C, and D, respectively. Rice also relies on certain factual allegations in Doe's live Original Complaint. *See Isquith v. Middle South Util., Inc.*, 847 F.2d 186, 194-95 (5th Cir.), cert. denied, 488 U.S. 926 (1988) (admissions or stipulations in complaint are admissible when offered *against* the plaintiff by the defendant).

[2] Because he apparently did not understand or did not care about the seriousness of the claims or potential harm, Rice temporarily suspended Doe from campus to "ensure the safety and wellbeing of members of the University community." Garza Dec., Ex. 9 (suspension letter); *id.*, Ex. 10, §§ 1.E.1, 2 (Student Code of Conduct sections). Academic access was restored on March 7 after he finally began meaningfully, and personally, engaging in the process. *Id.*, Ex. 18.

Doe was well aware of the situation in the interim—or should have been. A February 14 "Charge Letter" from SJP detailed the allegations and evidence against him, explained Rice was investigating whether he tried to, or was reckless in a way that did or could have, physically or mentally hurt Roe or whether he committed dating violence,[3] and discussed next steps, including his right to schedule a review of SJP's disciplinary file and a February 21 deadline for responding to the charges and providing additional information to SJP for its file—which Doe also ignored. *See* Garza Ex. 8, *passim*.[4] He only responded after SJP unilaterally extended his deadline to March 5, and then to March 6, at his request, so he could review SJP's file for the first time on March 5 instead. His response denied failing to inform Roe of his disease, knowing it was permanent, and suggested she had herpes before they met based on what "another guy" told him. *See id.*, Ex. 23, *passim*.[5]

Additional evidence SJP gathered also included recordings of separate meetings with Roe and Doe,[6] a SnapChat message from Doe to Roe, medical records, and a report generated by the Rice University Police Department. *See* Garza Dec., Ex. 8, p. 1. Both Doe and Roe were informed when anything was added to the file, and could review, respond to, and supplement it at any time,

---

[3] *See* Garza Dec., Exs. 10 (Code of Student Conduct (the "Code), § II.B.1.a (prohibiting dangerous reckless conduct); 11 (same); 12 (Sexual Misconduct Policy), § D(3)(a) (defining "dating violence").

[4] Instead, his lawyer responded on his behalf again, despite already having been told SJP only communicates with students. Garza Dec., ¶ 20.

[5] The "other guy," whose full name Doe uses in two documents (and whose initials are "A.C."), *see* Garza Dec., Ex. 17, p. 2; *id.*, Ex. 23, p. 3, is "identified" in Doe's Complaint—depending on the paragraph—as either "T.O.," or "O.T.," *compare* Compl. (Dkt. 1), ¶¶ 62, 99.

[6] A "support person" can be with the student at SJP meetings for moral support, but cannot participate. *See, e.g.*, Garza Dec., Ex. 10 (Code §§ V.B.5, 6). Students can freely obtain legal and other advice at all other times. Doe nevertheless persisted in naming his lawyer, who consistently ignored the limited role he played, as his support person. Garza Dec., ¶ 12.

which they did. *See id.*, Exs. 19, 20. Doe ultimately reviewed the file five times. *See id.*, ¶ 30. On April 9, SJP informed Roe and Doe the investigation had concluded, but continued offering the opportunity to review and supplement the file through April 13. *Id.*, Ex. 21.

An April 17 Decision Letter summarized the entire investigation, describing all the evidence and explaining its implications and conclusions drawn from it, addressing conflicting and evolving statements and their effect on credibility, and stating and justifying its findings. No inconsistency changed the facts that Doe knew he had incurable herpes before becoming intimate with Roe, any discussion with her, in Doe's own words, "wasn't deep or graphic" but "brief," and he never disclosed the implications and lifetime repercussions of being a herpes carrier or the heightened risk of unprotected sex. Garza Dec., Ex. 22, *passim*.

SJP found the evidence insufficient to show dating violence, but sufficient to show, more likely than not, that Doe "failed to adequately notify [Roe] of the fact that she was at risk of contracting HSV-1 from [Doe] if [they] engaged in unprotected sex." *Id.* Having unprotected sex with Roe anyway was "a reckless action from which mental or bodily harm could result to another person," in violation of the Code. Doe was disciplined with "rustication"— allowing him on campus for academic purposes, and for other purposes with prior SJP permission. *See* Garza Dec., Ex. 22, p. 7. After 14 months, Doe could petition SJP to lift his rustication and return to campus with no restrictions.

Doe appealed, claiming the investigation was biased and incomplete due to inconsistencies already identified—Roe may not have gotten herpes from because she was not been tested before December 2017 and was untruthful about the frequency of testing, she was unreliable, describing her own memory as "horrible," and untruthful, having not told police that Doe mentioned herpes but telling SJP he had—and disparate treatment—Rice never punished

Roe for saying she would use condoms instead of disclosing her condition, or investigate her for allegedly giving herpes to a third Rice student. *See* Garza Dec., Ex. 23.

Rice's Dean of Undergraduates John Hutchinson explained why Doe failed to suggest a biased investigation or cast doubt on SJP's decision.[7] Whatever Roe—against whom no similar complaint was ever filed by Doe or anyone else—did or didn't do, past or future, did not reduce *Doe's* responsibility for *his own* actions. *See* Garza Ex. 24, *passim*. Nothing Doe alleged diminished the facts that he, "[a]s the carrier of the infection…bore the responsibility for the safety of any and all sexual partners with whom [he] engage[s]. [His] brief disclosure [to Roe]…failed that responsibility." *Id.*

Doe's complaints his discipline affected his Rice athletic and academic career are red herrings. Doe became a part-time student ineligible to compete by late March of 2018 through no action by SJP, and had asked and obtained permission for other institutions to talk with him about transferring by April 19—only two days after the Decision Letter, and before appealing his discipline. *See* Mello Dec., Exs. 1, 2. He voluntarily withdrew as a Rice student effective July 16, 2018 to transfer to another institution. Garza Dec., Ex. 23.

## **ARGUMENT**

## I.     TITLE IX.

Doe asserts his Title IX claim under three of the four theories[8] currently recognized by various courts: (1) an erroneous outcome of a disciplinary proceeding; (2) selective enforcement of university procedures to students of different sexes; and (3) actions based on the university's

---

[7] Dean Hutchinson's reasoning is more fully set out in the response to Doe's appeal. *See* Garza Dec., Ex. 24.

[8] It is unclear whether Doe is claiming under the fourth Title IX theory, deliberate indifference to harassment. Rice moves for summary judgment on it if he is.

6

archaic assumptions about the roles and behavior of men and women. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 639 (1999); *Pederson v. La St. Univ.*, 213 F.3d 858, 880–82 (5th Cir. 2000). Without evidence, his theories are irrelevant.

### A. Erroneous Outcome.

An "erroneous outcome" cause-of-action requires Doe prove that (1) he is innocent, and therefore was wrongly convicted, and (2) "gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d at 715. There must be a causal connection between the flawed outcome and the alleged gender bias, as shown by "particular evidentiary weaknesses behind the finding such as a motive to lie on the part of the complainant or witnesses, particularized strengths of the defense," "procedural flaws" or "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patters of decision-making that also tend to show the influence of gender." *Id.* Doe cannot offer any such evidence.

First, he is not innocent. He admitted in writing, and later corroborated in a face-to-face meeting with Ms. Garza, to knowing he had herpes, knowing it was a lifelong disease, and not disclosing this information to Roe. Doe and Roe both made inconsistent statements at times. But Roe's inconsistencies, motives, and "bad memory" did not change the undisputed evidence— Doe's admissions about what he had not disclosed. Based on this evidence, SJP determined it more likely than not that Doe failed to adequately notify Roe of the risks of contracting herpes

during unprotected sex—a reckless action that could result in mental or bodily harm to another person, violating the Code.[9]  Garza Ex. 10, § II.B.1.a.[10]

Doe cannot point to evidence of biased statements by SJP or university officials, or a pattern of decision-making suggesting Doe's gender influenced Rice's conduct.  In this way, this case mirrors *Pacheco v. St. Maty's Univ.*, 2017 WL 2670758 (W.D. Tex. June 20, 2017), where a male student claimed gender bias in a disciplinary proceeding but could not point to any evidence suggesting the university's decision was based on his gender, or that the outcome was flawed.  Like in *Pacheco*, the evidence shows that Rice made its decision by "reviewing the statements and weighing the witnesses' credibility."  *Id.* at *16.

Doe has no evidence he was denied due process because he is male.  Cross-examination, confrontation, and representation by counsel were not due process rights required in Doe's disciplinary proceeding under Rice's policies or the law.  *See id.* at *17 (citing *Dixon v. Ala. State Bd. Of Educ.*, 294 F.2d 150, 159 (5th Cir.), cert denied 368 U.S. 390 (1961)); *Winnick v. Manning*, 460 F.2d. 545, 549 (2d Cir. 1979)).  More importantly, no evidence suggests Rice denies process to men it provides to women, that it denied Doe process provided to Roe, or decided not to begin providing additional process to Doe *because of his gender*.

The reasonable, non-discriminatory reason to sanction Doe was that as a carrier of an incurable sexually transmitted disease who could have adequately disclosed those facts before having unprotected sex with a new partner, he didn't.  That—not his sex—led to his discipline.

---

[9] Since Doe confirmed he and Roe were alone during their "brief," "not deep or graphic" conversation, there were no other witnesses to the relevant conduct.  *See* Garza Dec., Ex. 8.

[10] The decision not to criminally prosecute Doe does not make Rice's investigation an intentionally discriminatory "sham."  *See* Compl. (Dkt. 1), ¶ 95.  SJP found Doe violated different standards under a different burden of proof.  The two are in no way inconsistent.

*See Klocke v. University of Texas at Arlington*, 938 F.3d 204, 211–12 (5th Cir. 2019) (finding a reasonable, non-discriminatory reason for university's investigation and findings, and concluding gender bias in these circumstances would be "speculative"); *Davis*, 526 U.S. at 649 (conduct in Title IX cases must be "clearly unreasonable"). Claiming gender bias is pure speculation by someone still refusing to take responsibility for their actions.

## B. Selective Enforcement.

Proving selective enforcement requires a nearly identical comparator against whom a plaintiff can compare their treatment. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). There is no evidence whatsoever that Rice treated a female similarly situated to Doe better than Rice treated him.

### 1. Roe was never accused, and thus is not similarly situated.

Doe's argument is that Rice treated him worse than Roe, his accuser, because he is a man. *See* Compl., ¶ 99. Pacheco also failed using a nearly identical tactic, offering his accuser as a comparator because they were both found partially clothed and intoxicated, but he was the only one disciplined. Rejecting that comparison, the court noted several differences between them, focusing on one in particular: "no students made allegations or complaints of sexual misconduct against her, including Pacheco, and no criminal charges were filed against her." *Pacheco*, 2017 WL 2670758, at *19. The university "undoubtedly treated [the complainant] more favorably," but it was the differences between them, "***most notably the lack of any allegation or complaint of misconduct***" against the complainant that "accounts for the disparate treatment." *Id.* (emphasis added).

Doe's similarities to Roe end at their necessarily shared encounter. No one filed charges against or complained about Roe regarding herpes, including Doe, or T.O./O.T./A.C. (whoever

9

hey/they really is/are), and Roe never "face[d] her own consequences." Garza Dec., Ex. 24. There is no evidence Roe had sex, protected or otherwise, without full disclosure. Doe cannot raise any inference of gender bias by maligning Roe's character.

2. An investigation into discriminatory all-female academic programs bears no resemblance to Doe's circumstances.

Doe attempts to show Rice's gender bias by pointing to a Department of Education Office of Civil Rights investigation initiated in July 2019. Compl. (Dkt. 1), ¶ 40. Doe describes it as arising from "all-female educational programs run by Rice University." *Id.* If it exists, Doe's own description completely distinguishes it from any similarity to his allegations. Unable to produce any evidence of any probative similarities, this allegation, like his others, remains just that.

3. Doe was not treated any less favorably than similarly situated women.

Doe again makes an allegation he cannot prove. No evidence raises even the slightest inference that Rice treats similarly situated women less favorably than men. Doe's only "evidence" of disparate treatment—comparing himself to Roe—is already debunked. Allegations are not evidence.

C. Archaic Assumptions.

Doe's last argument is that Rice's decision to discipline him stems from archaic assumptions that men in consensual sexual relationships know more than women do, and owe more to women as a result—including the obligation of researching, understanding, and disclosing the consequences of unprotected sexual with someone with herpes. *See* Compl. (Dkt. 1), ¶ 97.

The Fifth Circuit discussed the archaic assumptions theory at length in *Pederson v. La. State Univ.*, 213 F.3d 858, 879–82 (5th Cir. 2000), where despite decades of social change, and a nearly equal population of male and female students, LSU continued to assume that its women students did not want to participate in sports in the same manner and to the extent as its male

10

students. Evidence at trial supported this conclusion. For instance, in a meeting to discuss a women's varsity soccer team, the Athletic Director repeatedly referenced a female athlete as "sweetie," "honey," and "cutie," and stated that he would "love to help a cute little girl like [her]." Another female student testified that when she met with representatives from LSU's Sports and Leisure Department, she was told LSU would not sponsor female fast-pitch softball because "the women might get hurt." Other evidence of discrimination included LSU's consistent approval of larger budgets for the men's teams' travel, personnel, and training facilities than for the women's teams, as well as much higher compensation rates for the male team coaches. The Fifth Circuit found the evidence of LSU's generalizations about its women athletes' talents, capacities, and preferences to be broad, systematic, and intentional, and thus sufficient to support a Title IX violation.

Juxtaposed with *Pederson*'s voluminous record is Doe's feeble claim: that in one singular incident, Rice imposed a duty on a male student to inform his sexual partner, a female student, of his incurable sexually transmitted disease, its consequences, and the risks associated with unprotected sexual contact—***not*** because the man was a knowing carrier of the disease, but because of Rice's chauvinist and paternalistic views of men and women.

This is a bold theory, the only possible evidence of which is that SJP did not investigate or sanction Roe, a female student, for either her assertion that she intended to use condoms instead of revealing her diagnosis, or for allegedly giving T.O./O.T./A.C. herpes. Again, Doe assumes too much, including that despite its policy to the contrary, SJP should have investigated Roe *sua sponte*—without a complaint from any other student, including Doe himself. Doe also necessarily assumes that the failure to investigate was somehow motivated by Roe's gender, as he must

11

contend that if presented with an identical situation—but a man—Rice would have investigated

and sanctioned him. These theories are both unfounded and without any evidentiary support.[11]

## II.      Breach of Contract

Doe contends Rice's investigation and sanction breached unnamed express and implied

contracts. His contract claim fairs no better than his Title IX allegations. Even if he could establish

a contractual relationship with Rice existed—a dubious feat under Texas law—he has no evidence

of breach.

A Texas plaintiff alleging a breach of contract must show (1) the existence of a valid

contract; (2) performance by the plaintiff; (3) breach of that contract by the defendant; and (4)

damages. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016). Doe claims

Rice created a contract with him when Doe "accepted an offer of admission" and "paid the tuition

---

[11] It is unclear whether Doe makes a claim under the fourth Title IX theory: deliberate indifference to sexual harassment or sexual assault on campus. Doe's Complaint cites the four Title IX theories, and then states definitively that he is asserting claims under *only* 3 of them (i.e., erroneous outcome, selective enforcement, and archaic assumptions). Compl. (Dkt. 1), ¶ 92. Doe nevertheless then devotes the next several paragraphs to allegations of Rice's apparent "deliberate indifference" to the "sex-based harassment that John Doe was forced to endure from Jane Roe when she lodged heinous and false complaints with [RUPD] and, subsequently, Rice University." *Id.* at ¶ 94. According to Doe, Rice was "complicit" in Roe's harassment when it "jumped head-long into a sham sexual misconduct investigation." *Id.* at ¶ 95.

To the extent it exists, Rice is entitled to summary judgment on this claim. The record does not show that Doe can meet the "high" bar to show that Rice's response was "clearly unreasonable in light of the known circumstances," or that Rice "caused" Doe to be subjected to Roe's apparent harassment. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Indeed, Doe cannot even show that Roe's complaints to RUPD and SJP amounted to sexual harassment. An allegation that Doe gave Roe herpes in potential violation of both the criminal law and Code of Student Conduct is not "so severe, persuasive, and objectively offensive that it effectively barred [Doe] access to an educational opportunity or benefit." *Id.* at 165; *see also Carmichael v. Galbraith*, 547 Fed. App'x 286, 289–90 (5th Cir. 2014) ("Only claims involving pervasive and widespread conduct are actionable; a single incident is not enough.").

and fees," Compl. (Dkt. 1), ¶ 109, and Rice breached by depriving him of a fair and impartial disciplinary process by denying him the rights to confront and cross-examine his accuser, shifting the burden of proof, and meting out a "disproportionate sanction." *Id.* ¶¶ 111–13.

His allegations are meritless. Doe cannot show the law's most basic requirement: a valid contract. Rice's Code certainly is not one. In addition to expressly saying it creates no contractual rights,[12] Rice can unilaterally modify it.[13] No intent to be bound by the document's terms can exist in these conditions, precluding the creation of a contractual relationship with Doe. *See Pacheco*, 2017 WL 2670758, at *9 ("when a handbook lacks express language evincing an intent to be bound and instead contains provisions that reserves a right to change or alter the policies contained in a student handbook, there is no contract because there is no intent to be bound."); *Eiland v. Wolf*, 764 S.W.2d 827, 838 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (finding that no enforceable contract existed based on the express statement that the provisions of the university catalogue were subject to change); *Tobias v. University of Texas at Arlington*, 824 S.W.2d 201, 211 (Tex. App. —Fort Worth 1991), cert. denied, 506 U.S. 1049 (1993) (finding an express disclaimer of a contract negates the inference of any intent to be bound by the university catalog); *Southwell v. Univ. of Incarnate Word*, 97 4 S.W.2d 351, 355-56 (Tex. App.—San Antonio, 1998, pet. denied) (finding a student bulletin did not create a contract between a

---

[12] *See* Garza Dec., Ex. 10, § I.A ("The Code is not intended to—and does not—confer any contractual rights on any individuals involved."); *id.* § V.A. ("The procedures used in a University Court or College Court meeting or by SJP are not those used in court cases and are not intended to create contractual rights, including any rights to due process as that phrase is used in courts of law.").

[13] *See* Garza Dec., Ex. 10 § I.D ("Provisions of this Code may be reviewed and amended at any time by the Dean of Undergraduates and the Associate Dean of Undergraduates, and are effective when approved by both.").

university and a student because there was no intent to be bound when the college reserved the right to alter the bulletin without prior notice).[14]

Even if Doe could establish a valid contract, the so-called violations that Doe alleges are not breaches of anything, including any implied contract.[15] Not only is there is no requirement that Rice—a private university—provide its students with rights commensurate with a criminal investigation by the state, *see Pacheco* at *17 (citing *Dixon*, 294 F.2d at 159), Rice expressly states it does not provide those rights, *see* Garza Dec., Ex. 10, § V(A) ("The procedures used…by SJP are not those used in court cases and are not intended to create contractual rights, including any rights to due process as that phrase is used in courts of law. Formal rules of evidence and jurisprudence do not apply."). The constitutional due process and rights that Doe claims he was owed, such as to confront his accuser and cross-examine witness—are inapplicable here.

Still, Doe was not without rights, all of which he was provided as required. As already extensively noted above, his interim suspension was fully justified, the Charge Letter outlined the facts and allegations against him, and the violations being investigated, he had and took opportunities to respond and provide SJP with additional information, he reviewed the disciplinary file multiple times, he was accompanied by his "support person" at his discretion, he was informed of SJP's decision and its basis, he was rusticated as discipline, informed of his right to appeal, did so, and had it adjudicated in a ruling detailing why each alleged point of error failed to warrant overturning SJP's ruling. Doe was provided all of these processes and procedures in full

---

[14] While some courts have recognized an implied contractual relationship between students and higher educational institutions, no binding authority in this district has recognized such a right.

[15] Courts recognizing such implied contracts define what is and is not in them by reference to the university's policies—in this case, the Code. *See Southwell*, 974 S.W.2d at 356 ("The specific terms of such a contract must logically be defined by the college or university's policies and requirements.").

compliance with Rice's Student Code of Contract.  To the extent the Code was a contract Rice was obligated to follow, the evidence shows it did so.[16]

### III.  Damages

Doe also lacks any evidence of damages allegedly arising from his discipline.  While this case was still venued in the Eastern District, Judge Mazzant's Order Governing Proceedings (Dkt. 21) required that by February 10, 2020, the parties make their mandatory initial Rule 26 disclosures—including "a computation of each category of damages claimed by the disclosing party"—and actually produce "[a] copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party."[17]  *See* Order (Dkt. 21), p. 4; *see also* FED. R. CIV. P. 26(a)(1)(A)(iii).  The discovery period was "**NOT** an invitation, or authorization, to withhold documents or information required to be disclosed as part of initial mandatory disclosure, under the guise of "'supplementation.'"  *Id.*, p. 5 (emphasis in original).  Failing to fully comply had significant consequences:  "**A party that fails to timely disclose such information will not, unless such failure is harmless, be permitted to use such evidence at trial, at a hearing, or in support of a motion.**"  *Id.* at 4 (emphasis in original).

Despite voluntarily leaving Rice, Doe's "tremendous damages" include emotional distress…anxiety, severe depression, and suicidal ideations, loss of educational and career opportunities, economic injuries and other direct and consequential damages supposedly entitling him to actual damages, attorneys' fees, expenses, and costs, and injunctive relief.  His mandatory

---

[16] With no cognizable breach of contract or Title IX claims, there are no disputes to be resolved, and Doe's declaratory judgment claim, with the rest of his claims for equitable relief, fails as well.

[17] The Eastern District Local Rules expansively define the phrase, "relevant to the claim or defense of any party."  *See* Eastern District Local Rule CV-26(d)(1)-(5).

initial disclosures, both original and as supplemented, show otherwise—Doe failed to provide a single computation, for a single category of damages, in either document—despite being under Court order to do so. *See* Kernell Dec., Ex. 1, p. 7, ¶ 22, Ex. 2. Instead, he "disclosed" the kinds of things he would ask for, and that he wants more than $1,000,000. *Id.*

He produced no documents supporting his missing damages computations, but still nevertheless responded to Rice's requests for all documents referenced in his initial disclosures that "[s]aid documents have been produced." Kernell Dec., Ex. 3, p. 1. He asserted no objections to Rice's other requests for all documents related to or supporting Doe's claim for mental anguish, emotional distress, future mental anguish, economic damages, reputation damages, damages related to the loss of any educational or career opportunities, damages related to the loss of any future career opportunities, and any relevant legal billing records, again referring Rice to his prior production. *Id.*, p. 4. Doe's production—all 31 documents—is pitiful. It contains offer ***no*** evidence of any damages, "tremendous" or otherwise.

Lacking any admissible evidence of damages, this case should proceed to dismissal on summary judgment instead of trial. *See Norris v. P.A.M. Transport, Inc.*, 2017 WL 3671366 (E.D. Tex. Aug. 10, 2017) (barring plaintiff from offering any damage evidence at the summary judgment stage where he had failed to do so before close of discovery, and where the court entered a nearly identical order at the outset requiring timely disclosure of all relevant documents; finding no evidence of damages; and granting summary judgment).

**CONCLUSION**

Doe lacks even the basic evidence necessary to support his claims or to create a genuine issue of material fact. Rice requests that this Court grant summary judgment on each of Doe's claims and dismiss this case with prejudice.

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES, LLP**

 /s/ Russell Hardin, Jr.
Russell Hardin, Jr.
State Bar No. 08972800
Federal I.D. No. 19424
rhardin@rustyhardin.com
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

**ATTORNEY-IN-CHARGE FOR DEFENDANT
WILLIAM MARSH RICE UNIVERSITY**

**OF COUNSEL:**
Terry D. Kernell
State Bar No. 11339020
Federal I.D. No. 15074
tkernell@rustyhardin.com
Emily M. Smith
State Bar No. 24083876
Federal I.D. No. 18906776esmith@rustyhardin.com
**RUSTY HARDIN & ASSOCIATES, LLP**
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

**ATTORNEYS FOR DEFENDANT
WILLIAM MARSH RICE UNIVERSITY**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the  16th day of January 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties.

*/s/ Terry Kernell*
Terry Kernell