United States District Court
Southern District of Texas
**ENTERED**
September 16, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4: 20-cv-2985 |
| | § | |
| WILLIAM MARSH RICE UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

### O R D E R

Pending before the Court is Defendant William Marsh Rice University's Motion for Summary Judgment. **(Instrument No. 61).**

### I.

### A.

Plaintiff John Doe ("Plaintiff"),  a former student and football player at Defendant William Marsh Rice University ( the "University") brings a Title IX discrimination claim alleging that the University's investigation of his conduct was motivated by "an anti-male discriminatory bias." (Instrument No. 1 at 7). Additionally, Plaintiff brings a breach of contract claim alleging that the University breached its contract  when it failed to conduct a fair and impartial disciplinary process during its investigation of Plaintiff's conduct. (Instrument No. 1 at 33). Based on his claims, Plaintiff seeks declaratory judgment and injunctive relief under 28 U.S.C. Section 2201. (Instrument No. 1 at 1, 22).

### B.

In Fall 2017, Plaintiff was a freshman football athlete at the University. (Instruments No.61 at 3; No. 79 at 4). Prior to attending the University, Plaintiff was diagnosed with herpes. (Instruments No. 63 at 144-147). In Fall 2017, Plaintiff began a relationship and engaged in

1

multiple, unprotected sexual encounters with University student Jane Roe ("Roe"). (Instruments No. 61 at 3; No. 79 at 4, 6). In early December 2017, Roe and Plaintiff's relationship ended the day after they had a sexual encounter. (Instruments No. 61 at 3; No. 79 at 6).

On or about December 14, 2017, Roe visited the University's Student Health Services and received a preliminary diagnosis of herpes. (Instrument No. 63 at 13). On or about December 14, 2017, Roe and Plaintiff discussed via text messages, Roe's preliminary herpes diagnosis, Plaintiff's herpes status, and the life-long implications of contracting herpes. (Instrument No. 63 at 22-28). Roe informed Plaintiff that she believed she contracted Herpes from him. (Instrument No. 63 at 22-28). Plaintiff confirmed that he contracted herpes "a long time ago." (Instrument No. 63 at 25). Plaintiff further responded "Yes" when asked by Roe if he had known he "had herpes this entire time and didn't tell [Roe] until now." (Instrument No. 63 at 26).

On December 15, 2017, Roe spoke with the University's Cathryn Councill ("Councill") and alleged that she became infected with herpes after having a consensual sexual encounter with another University student. (Instrument No. 63 at 13). Roe reported that this University student failed to inform her that he had herpes prior to their sexual encounter. (Instrument No. 63 at 13). Roe inquired about how to make a report through the University's Student Judicial Programs ("SJP"). *Id.*

On or about December 18, 2017, Roe filed a report with the Rice University Police Department ("RUPD" or "Police") alleging that a University student, Plaintiff, failed to inform her that he had herpes prior to them engaging in unprotected sex. (Instrument No. 63 at 14). On December 19, 2017, Roe requested that the University Police file criminal charges against Plaintiff. (Instrument No. 63 at 19). On or about February 1, 2018, the State's ADA Sarah Nayland declined to pursue charges, because the State could not "prove that the Defendant [Plaintiff]

intended to cause the Complainant [Roe] pain . . . Specifically, the State cannot prove that the Defendant [Plaintiff] intended to spread herpes to the Complainant [Roe]." (Instrument No. 63 at 17).

On January 30, 2018, Roe met with the University's SJP. (Instrument No. 63 at 21). On February 12, 2018, Roe submitted a written complaint to SJP. (Instrument No. 63 at 21, 30). In her complaint, she alleged that Plaintiff failed to inform her that he had or still had herpes during their relationship. (Instrument No. 63 at 21).  On February 13, 2018, the Director of the University's SJP, Emily Garza ("Garza") emailed Plaintiff forbidding contact with Roe and scheduling a February 14th meeting with him to discuss "a disciplinary matter." (Instruments No. 61 at 3; No. 63 at 31).

On February 14, 2018, Plaintiff's then-attorney called Garza and informed her that Plaintiff would not be attending the meeting that day. (Instrument No. 63 at 33). After this phone call, Plaintiff sent Garza an email asking to reschedule the meeting. (Instrument No. 63 at 32). On the same day, Garza sent a charge letter to Plaintiff (1) notifying him of the disciplinary charges filed against him under the University's Code of Student Conduct (hereafter referred to as the "Code" or "University's Code"), (2) summarizing the allegations made against him by Roe, and (3) explaining the University's next steps. (Instrument No. 63 at 33-36). In the charge letter, Garza indicated that she was investigating whether Plaintiff violated the Code's Section II. B.1.a, which prohibits "intentionally inflicting or attempting to inflict mental or bodily harm on any person . . . taking reckless disregard, from which mental or bodily harm could result to any person" and expressed concern that his conduct "may qualify as dating violence" under the Sexual Misconduct Policy. (Instrument No. 63 at 35). In the letter, Plaintiff was informed that he had until February

21, 2018 to respond to the charge letter. *Id.* SJP later extended his response deadline to March 6, 2018. (Instrument No. 63 at 109).

On February 14, 2018, the University's Dean Donald Ostdiek ("Dean Ostdiek") sent Plaintiff a letter notifying him that he was placed on an interim suspension immediately pursuant to the Code's Section 1. E.1 and 1 E.2. (Instrument No. 63 at 37). The letter indicates that the University suspended Plaintiff in order to protect the University community and because of Plaintiff's "choice not to participate in the Rice processes." *Id.* Additionally, the letter states that Plaintiff previously "declined to participate with RUPD in their investigation." (Instrument No. 63 at 37). The letter also indicates that the interim suspension would be reviewed after Plaintiff engaged in the University's investigation process. *Id.*

On March 6, 2018, Plaintiff submitted a written response to Roe's complaint. (Instrument No. 63 at 112-115). In his response, Plaintiff alleged that early in their relationship he and Roe discussed that he had a "run-in" with herpes in high school and contracted chlamydia at the University. (Instrument No. 63 at 112). Plaintiff stated that in high school, he was diagnosed with the HSV-1 type of herpes. *Id.* Plaintiff alleged that he had not had "herpes outbreaks or symptoms" since high school. (Instrument No. 63 at 113). Plaintiff also alleged that Roe may have contracted herpes from several other students. *Id.* Plaintiff furthered alleged that he never lied about his "sexual history or STD's."(Instrument No. 63 at 115).

On March 7, 2018, Plaintiff and his support person, his then-attorney met with Garza. (Instrument No. 63 at 9). On the same day, the University notified Plaintiff that he may attend classes since he was participating in its investigation process. (Instrument No. 63 at 116).

On April 17, 2018, Garza issued a Decision Letter summarizing the investigation, evidence, conclusions, and the parties' conflicting statements. (Instrument No. 63 at 142-149).

4

During the investigation, Garza gathered and then considered the following information: Roe's written complaint, Plaintiff's written response to the University's charge, Roe and Plaintiff's text and Snapchat messages, Roe's medical records, the University's Police report, and her recordings of the separate meetings with Plaintiff and Roe. (Instruments No. 61 at 4; No. 63 at 142-149). Based on the preponderance of evidence standard, Garza concluded that Plaintiff violated the University's Code, but that his behavior did not violate the Sexual Misconduct Policy. (Instrument No. 63 at 143). First, the report states that based on the evidence, "you failed to adequately notify [Roe] of the fact that she was at risk of contracting HSV-1 from you if the two of you engaged in unprotected sex. Your failure to clearly disclose this information to a sexual partner, and then subsequently engage in unprotected sex, was a reckless action from which mental or bodily harm could result to another person."(Instrument No. 63 at 142-143). Garza noted that when students give conflicting statements, she considers other information such as text messages. (Instrument No. 63 at 147). Second, the reports states, "It is consistent with both of your recollections that you discussed your recent (at the time) diagnosis and treatment of chlamydia, each person's list of sexual partners, and your "run-in" with herpes in high school. I would like to note that the term "run-in" was used by you in both a meeting with me and your written statement, and you described the portion of your conversation related to herpes as "not deep or elaborate on the effect . . . or the risks[.]"" (Instrument No. 63 at 147). Third, the report states that Plaintiff's disclosure did not meet the "high expectations of civility and respect for others . . . as described in the Code of Student Conduct." *Id.* Fourth, the report states while Roe "acknowledges that you mentioned a history with herpes early in the relationship, she [Roe] was never informed of the details of the disease, the long-term effects, or how it spread." *Id.* Fifth, the reports states, "Your text messages to her also reinforce that the previous face to face conversation was insufficient to reach a clear conclusion or

understanding." (Instrument No. 63 at 147-148). As a result of these finding, Plaintiff was disciplined with "rustication." (Instrument No. 63 at 148). Rustication —permitted Plaintiff to be on campus solely for academic purposes, and for other purposes with prior SJP's permission. (Instrument No. 63 at 148).

On April 23, 2018, Plaintiff filed his Notice of Appeal of SJP's Decision Letter with Dean John S. Hutchinson ("Dean Hutchinson"). (Instrument No. 63 at 150-156). In his Notice, Plaintiff alleged that Roe gave conflicting testimony and "no reasonable trier of fact would find" Roe "credible or sustain his [Plaintiff's] charges." (Instrument No. 63 at 150). Plaintiff asserted the SJP was biased in favor of Roe. (Instrument No. 63 at 153). Additionally, Plaintiff contended that the University's administration failed to hold Roe responsible for her "reckless" behavior. (Instrument No. 63 at 152). Plaintiff also alleged that Garza failed to interview another student who he alleges contracted herpes from Roe, prior to Plaintiff attending the University. *Id.*

On May 4, 2018, Dean Hutchinson issued his decision and sustained SJP's finding of the violation for reckless disregard and sustained the disciplinary sanction. (Instrument No. 63 at 154-156). Dean Hutchinson found Plaintiff's Notice failed to present any evidence of bias. (Instrument No. 63 at 156). Dean Hutchinson considered whether Plaintiff's claim about Roe's lack of credibility affected any disputed facts. (Instrument No. 163 at 154). Dean Hutchinson recalled that the dispute was whether Plaintiff provided Roe with "appropriate, necessary, and timely information" about his herpes diagnoses prior to engaging in sexual contact with Roe. *Id.* Dean Hutchinson determined that Plaintiff's text messages to Roe, established that his conduct constituted "reckless disregard." (Instrument No. 63 at 155). Additionally, Dean Hutchinson found that a number of Plaintiff's allegations did not address the issue investigated by Garza—which

was whether Plaintiff gave "sufficient notice" about his herpes diagnosis. (Instrument No. 63 at 155).

On July 16, 2018, Plaintiff withdrew from the University. (Instrument No. 63 at 157).

### C.

On August 17, 2017 and March 5, 2018, the University revised its Code of Student Conduct. (Instruments No. 63 at 39, 63). The Code provides that its purpose is to "articulate and enforce standards of behavior." (Instrument No. 63 at 63). The standards provided are intended to "prohibit misbehavior and to punish violations but also to educate about behavior and character traits that the [University] community wishes to promote or discourage; to protect community members from harm or unwarranted interference . . ." (Instrument No. 63 at 63).

The Code's Section II. B 1. a.  prohibits "Mental or Bodily Harm, Reckless Action or Disregard: intentionally inflicting or attempting to inflict mental or bodily harm on any person, including on the charged student; taking any reckless action, or showing reckless disregard, from which mental or bodily harm could result to any person, including to the charged student." (Instrument No. 63 at 71). The Code's Section III prohibits sexual misconduct pursuant to its Title IX Policy. (Instrument No. 63  at 76-77). The Code applies to on and off campus behavior. (Instrument No. 63 at 64). The Code provides the "procedures for determining the facts regarding a charge and arriving at a fair and informed resolution of a charge" and the process for appealing the official bodies' decision. (Instrument No. 63 at 80, 84). The Code indicates that  a number of official bodies including the SJP can administer the Code. (Instrument No. 63 at 65).

The Code provides that after a complaint has been filed, the student "charged" shall be notified of the alleged Code's violations. (Instrument No. 63 at 83, 91). Additionally, during the investigation the respondent has an opportunity to respond to the charges,  review the respondent's

disciplinary file, submit information, and receive notice of the procedural steps in the disciplinary process, including the student's ability to appeal the decision. (Instrument No. 63 at 81-85). After concluding its investigation, the official body will issue a decision. (Instrument No. 63 at 67). The Code provides that the University will apply the preponderance of evidence standard to determine "whether the information shows the student is more likely than not to have committed the behavior at issue." (Instrument No. 63 at 80, 99).

### D.

On September 11, 2019, Plaintiff filed his Complaint against William Marsh Rice University, Emily Garza, and Donald Ostdiek. (Instrument No. 1). Plaintiff brings a gender discrimination in violation of the Title IX of the Educational Amendments Act of 1972, 20 U.S.C. Section 1681 and breach of contract claims. *Id.* at 1. Additionally, Plaintiff seeks declaratory judgment and injunctive relief for the forementioned claims. *Id.* On May 6, 2020, Plaintiff filed a Notice of Dismissal as to Defendants Emily Garza and Donald Ostdiek that was incorrectly filed as a Motion to Dismiss. (Instrument No. 33). On May 7, 2020, the U.S. District Court for the Eastern District of Texas entered an Order dismissing Defendants Emily Garza and Donald Ostdiek. (Instrument No. 34). On August 4, 2020, the Court granted a Motion for a Change of Venue by Defendant Rice University and this case was transferred to the Southern District of Texas on August 25, 2020. On January 16, 2021, the University filed its Motion for Summary Judgment. (Instrument No. 61). On February 26, 2021, Plaintiff filed his Response. (Instrument No. 79). On March 5, 2021, the University filed its Reply. (Instrument No. 86). On the same day, the University filed its Objections to Plaintiff's Summary Judgment Evidence. (Instrument No. 84). On March 12, 2021, Plaintiff filed a Response to the University's Objections. (Instrument No. 85). On March 15, 2021, the University filed its Reply to Plaintiff's Response to its Objections. (Instrument No.

86). On April 28, 2021, the Court granted the University's Motion for an extension of time to file

an answer. (Instrument No. 90). On April 28, 2021, the University filed its answer. (Instrument

No. 91).

## II.

As a preliminary matter, the University objects to Plaintiff's summary judgment evidence.

(Instrument No. 84). The University objects to seven of Plaintiff's exhibits: (1) the CDC's website

information on herpes; (2) Garza's deposition testimony regarding the University's disciplinary

process and the investigation of the complaint filed against Plaintiff; (3) Dean Ostdiek's deposition

testimony regarding the nature of the potential criminal charges filed against Plaintiff and

Plaintiff's University suspension; (4) Plaintiff's disciplinary charge response; (5) a partial draft of

the University's Garza's Finding Letter; (6) Plaintiff's affidavit, and (7) Plaintiff's Amended Initial

Disclosures. (Instrument No. 84 at 1-10). Plaintiff objects on the basis of form, relevancy, optional

completeness, hearsay, authenticity, improper judicial notice, failure to timely designate an expert,

and failure to timely disclose or supplement Plaintiff's disclosures. (Instrument No. 84 at 1-10).

In response to the University's objections, Plaintiff contends that the University is

attempting to "back door evidence" that it failed to cite in its Motion under the guise of "optional

completeness." (Instrument No. 85 at 1-2). Additionally, Plaintiff asserts that some of the objected

exhibit citations the University cites are not actually included in the Plaintiff's response.

(Instrument No. 85 at 2, 3). Plaintiff also contends that it is not offering Garza's deposition

testimony regarding whether she refused to interview a student witness, for the truth of the matter

or what the witness may have known. *Id.* at 2-3. Instead, Plaintiff argues that this testimony is

being offered to show gender bias. *Id.* Plaintiff contends that his written charge response is being

offered to show bias and is a prior consistent statement. (Instrument No. 85 at 3). Plaintiff asserts

that his affidavit's statements are not hearsay. (Instrument No. 85 at 4). Plaintiff further alleges

that these statements are "made by the declarant in a properly submitted affidavit." (Instrument

No. 85 at 4). Plaintiff contends that he has "direct knowledge" about the effects the University's

actions have had on his life. *Id.* Plaintiff argues that his affidavit statements are relevant to the

issue of bias. *Id.* Plaintiff alleges that his statements discussing whether or not the University

suspended Plaintiff before interviewing him are evidence of bias. (Instrument No. 85 at  5).

Plaintiff argues that he is offering his amended disclosures to address the University's contention

that Plaintiff never provided specific information regarding his damages.  (Instrument No. 85 at 4-

6).  In regard to the partial draft of the University's Finding Letter, Plaintiff contends that the

assertion for which this draft letter is offered for is the same assertion the University asserts in its

Motion for Summary Judgment. *Id.* at 5.

On a motion for summary judgment, "the admissibility of evidence . . . is subject to the

usual rules relating to form and admissibility of evidence." *Munoz v. Int'l Alliance of Theatrical*

*Stage Emps. & Moving Picture Mach. Operators of U.S. & Can.*, 563 F.2d 205, 213 (5th Cir.

1977). "A party may object that the material cited to support or dispute a fact cannot be presented

in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The hearsay rules as

prescribed by Federal Rules of Evidence 801 and 802 apply with equal force in the summary

judgment context. *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006). Furthermore, conclusory

statements, unsubstantiated and subjective beliefs, and speculative statements are not proper

summary judgment evidence. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380

(5th Cir. 1998).

The Court notes that the University specifically objects to excerpts of Garza and Dean

Ostdiek's deposition testimony  based on "optional completeness" and provides their full

deposition testimony. (Instrument No. 84 3-6). The Court notes that Rule 56(c) of the Federal Rules of Civil Procedure specifically allows depositions to be considered on a motion for summary judgment. Additionally, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. of Evid. 106. Thus, the Court will consider Garza and Dean Ostdiek's deposition testimony.

Additionally, as the Court's analysis will show, the Court did not need to rely upon the objected exhibits to resolve the Motion. *See Floyd v. Hefner*, 556 F. Supp. 2d 617, 636 (S.D. Tex. 2008) (Harmon, J.); *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 886 (S.D. Tex. 2011) (Gilmore, J.). Accordingly, the University 's objections are **OVERRULED**.

### III.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *see also* Fed. R. Civ. P. 56(a).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-25). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018) (internal quotations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *see also Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth

ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am.'s Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

In deciding a summary judgment motion, the district court does not make credibility determinations or weigh evidence. *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 612 n.3 (5th Cir. 2009). Nor does the court "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas*, 136 F.3d at 458; *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"). Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## IV.

Plaintiff brings several claims in his Complaint. Plaintiff asserts (1) declaratory judgment and injunctive relief action; (2) a Title IX claim, and (3) breach of contract. (Instrument No. 1). The University moves for summary judgment on Plaintiff's Title IX and breach of contract claims. (Instrument No. 61).

The Court notes that Plaintiff made a number of allegations under his Title IX claim's analysis, but failed to cite to the record for his assertions. (Instrument No. 79 at 23-27). The Court reiterates that it is not required to "sift through the record in search of evidence to support a party's

opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### A.

Plaintiff argues that the University discriminated against him based on gender. (Instrument No. 1 at 1). The University contends that it did not discriminate against Plaintiff and moves for summary judgment based on Plaintiff's lack of evidence to support his claims for Title IX discrimination. (Instrument No. 61 at 1, 6-12). Plaintiff does not assert a Title IX claim based on the deliberate indifference theory. (Instrument No. 1 at 26). In his Response, Plaintiff only addresses the erroneous outcome, selective enforcement, and archaic assumptions theories. (Instrument No. 79 at 23-27). Accordingly, the Court will address the merits of Plaintiff's Title IX claim based on the erroneous outcome, selective enforcement, and archaic assumptions theories.

Title IX of the Educational Amendments Act of 1972 ("Title IX") prohibits discrimination on the basis of sex in all federally-funded educational programs. 20 U.S.C. § 1681(a). Specifically, it provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

*Id.* Title IX is "enforceable through an implied private right of action," and "monetary damages are available in the implied private action." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998). A plaintiff may obtain damages under Title IX "where the funding recipient engages in intentional conduct that violates the clear terms of the statute." *Klocke v. Univ. of Texas at Arlington,* 938 F.3d 204, 209–210 (5th Cir. 2019), cert. denied, 140 S. Ct. 1268 (2020)( internal citations omitted).

1.

The University contends that Plaintiff cannot establish a Title IX erroneous outcome claim because (1) Plaintiff is not innocent based on his written and oral admissions; and (2) there is no evidence that gender bias motivated or influenced the University's actions. (Instrument No. 61 at 7-9).

To succeed on an erroneous outcome claim, a plaintiff must show both that the university's disciplinary proceeding had an "erroneous outcome" and that "gender bias was a motivating factor behind the erroneous finding." *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019), cert. denied, 140 S. Ct. 1268 (2020) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). "A plaintiff alleging an erroneous outcome must point to particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," and "demonstrate a "causal connection between the flawed outcome and gender bias." *Id.*

Plaintiff argues that the University's disciplinary outcome was "wrong." (Instrument No. 79 at 24). Plaintiff contends that the University failed to consider Roe's credibility and inconsistent statements. *Id.* Plaintiff cities to a Seventh Circuit Court of Appeals case where it found that a plaintiff provided evidence of a Title IX violation in part because of the University's failure to consider "Jane's credibility." (Instrument No. 79 at 24 citing *Doe v. Purdue Univ.*, 928 F.3d 652, 656 (7th Cir. 2019). In *Doe v. Purdue University,* a university's failure to interview Jane and Jane's failure to submit a statement regarding the Title IX incident was evidence that the University failed to consider Jane's credibility. 928 F.3d 652, 664-665, 669 (7th Cir. 2019). Plaintiff alleges that Roe's statement regarding whether Plaintiff told her that he contracted herpes before they slept together was inconsistent. (Instrument No. 79 at 24). Plaintiff asserts that Roe made inconsistent statements concerning when she discovered she had a herpes outbreak, the frequency of her herpes'

15

screenings, the number of sexual partners she had during the time she had sex with Plaintiff, and if she asked Plaintiff about herpes. (Instrument No. 79 at 24-25).

Plaintiff also asserts that there were procedural flaws in the University's investigation. (Instrument No. 79 at 25). Plaintiff contends that the University failed to conduct a hearing and failed to allow Plaintiff's then-attorney to participate in the disciplinary process. *Id.* Plaintiff asserts that the University refused to interview other students. *Id.* Plaintiff contends that Garza destroyed her investigatory notes. *Id.*

Additionally, Plaintiff argues that there is evidence of gender bias. (Instrument No. 79 at 25). Plaintiff proffers as evidence Garza's deposition testimony. *Id.* Much of Plaintiff's arguments focuses on the University and whether it considered Roe's responsibility for her contraction of herpes. *Id.* Plaintiff contends that the following incidents establish bias. Plaintiff alleges that the Garza "blame[d]" him for failing to "educate himself about herpes, but determined that Roe had no such responsibility." *Id.* Plaintiff alleges that Garza's failure to ask Roe any questions about her sex life is evidence of bias. *Id.* Plaintiff also contends that Garza failed to interview a witness who would state that Roe "gave his friend herpes" before Plaintiff had unprotected sex with Roe . . . *Id.* Furthermore, Plaintiff asserts that he was also charged with dating violence and "kicked out" of his dorm and classes before the University completed his investigation. (Instrument No. 79 at 25).

In its Reply, the University contends that Plaintiff failed to proffer any evidence to support the elements of the erroneous outcome theory. (Instrument No. 83 at 3). The University specifically argues that Plaintiff has failed to provide any evidence that his gender was the motivating factor in the University's decision to discipline him for violating the University's Code. (Instrument No. 83 at 2). This Code prohibits students from engaging in reckless actions that could result in mental or physical harm. *Id.* The University contends that unlike the complainant involved in the *Doe v.*

*Purdue,* there is no evidence that the University "chose to believe Roe, because she is a woman and to disbelieve Doe, because he is a man," (Instrument No. 83 at 7-8). The University proffered evidence that it considered Roe's credibility. (Instruments No. 83 at 3; No. 63 at 154-156). Additionally, the University contends that its investigation procedures apply equally to all complainants and respondents regardless of gender. (Instrument No. 83 at 8).

Plaintiff fails to raise a genuine issue of material fact under the erroneous outcome theory, which requires that there is an erroneous outcome and that gender bias is the motivating factor behind the erroneous outcome. *Klocke,* 938 F.3d at 210. Pursuant to the University's Code's provision II. B.1.a Plaintiff was alleged to have engaged in "reckless" behavior when he failed to adequately disclose his herpes diagnosis. (Instrument No. 63 at 33).   Contrary to Plaintiff's assertions, the record before the Court demonstrates that the University considered Roe's credibility and inconsistent statements. (Instrument No. 63 at 154-156). Dean Hutchinson's appeal decision explicitly addressed Plaintiff's allegation that the University did not consider Roe's credibility and inconsistent statements. *Id.* Additionally, Dean Hutchinson found that Plaintiff's text messages "alone" were sufficient evidence to support Garza's finding that Plaintiff violated the University's Code.  *Id.*  The record indicates Plaintiff admitted that he did not inform or inadequately informed Roe of his herpes status. (Instrument No. 63 at 142-146). Plaintiff and Roe discussed Roe's herpes outbreak and Plaintiff's disclosure of his status via text message. The text messages state:

> Roe: So [Plaintiff]. About the bumps and [...] [My friend] and I think it's herpes... and there's no possible way I could've gotten it from anyone else but you. And you did mention to me that you had a run-in senior year maybe? I' m going to get myself check hopefully tomorrow, but [Plaintiff] I most likely got it from u, which means u have dormant herpes. So you need to wear protection at all costs [.] We don't know yet [.]
> Plaintiff: Sorry Im busy with my morn. And I think it's that too, just looks similar. But yeah I had it a long time ago. And what does dormant mean[.] Would you be

comfortable showing me what it looks like?

Roe: Once u have herpes you have it for life, you know that right[.] It never goes away. Ever there's not a cure[.] Um I could try to take pictures[.]
Plaintiff: Yeah I do know that. I have the first one. I could explain on the phone[.]

Roe: So you know you've had herpes this entire time and you didn't tell me until now[.]
Plaintiff: Yes[.]
Roe: Why [Plaintiff] Why You gave it to me Why [Plaintiff][?]
Plaintiff: In all honesty I didn't think about that. I'm apologize. All I can say is that. And words won't help on my side.

(Instrument No. 63 at 22-27, 144). Thus, the evidence reveals that Plaintiff believed he had herpes "a long time ago" and told Roe that he had a "run-in" his "senior year" of high school. *Id.* at 144-146. Additionally, in the same conversation, Plaintiff explicitly answered "Yes" when asked by Roe "So you know you've had herpes this entire time and you did not tell me until now." (Instrument No. 63 at 144). When asked by Garza to explain his response to Roe's question, Plaintiff stated, "If I knew her sole purpose was to incriminate me, obviously I wouldn't have answered 'yes.' But to me, we had already talked about it, and you're [Roe] still giving me all these questions. I just answered her questions." (Instrument No. 63 at 145). Plaintiff's text messages and explanations reveals that he was aware that he continued to have herpes after his outbreak or diagnosis in high school. Additionally, Plaintiff acknowledged that he was answering Roe's question. Plaintiff's own acknowledgment coupled with his apology indicate that he did not sufficiently disclose that he had herpes, an incurable disease. Thus, his admission establishes that he engaged in "reckless action." Therefore, the Court finds that there was not an erroneous outcome.

Additionally, Plaintiff failed to present evidence that his gender was the motivating factor behind the University's decision. In the Fifth Circuit, gender is a motivating factor when the plaintiff identifies "evidence that gender bias affected [the] investigation and conclusion." *Klocke,*

938 F.3d at 211. Plaintiff's proffered evidence of bias focuses on whether Roe engaged in safe sexual practices and if she had a responsibility to educate herself on the risks of having unprotected sex. (Instrument No. 79 at 25). Roe's sexual history and knowledge about the risks of having unprotected sex is irrelevant and does not demonstrate that Plaintiff's gender affected the University's investigation or decision regarding the complaint filed against him.   Plaintiff's allegation that the   University failed to interview another student regarding whether Roe gave a third student herpes—is irrelevant to the University's Code's Section II.B.1.a violation, which Plaintiff was charged with and found to have violated. *Id.* Garza found Plaintiff engaged in "a reckless action from which mental or bodily harm could result to another person." (Instrument No. 63 at 142-143).  Additionally, Plaintiff fails to proffer any evidence of a report against Roe that he or someone else filed alleging the same conduct he was accused of by her. Instead, the record indicates that Roe filed a report against Plaintiff. (Instrument No. 63 at 21). Thus, the investigation and conclusion focused on whether or not Plaintiff violated the University's Code. The evidence demonstrates that the reason for the investigation was because Roe made a report and not because Plaintiff  was a male. The University's April 17, 2018 decision letter provided a number of non-discriminatory reasons explaining why the University concluded that Plaintiff violated the Code. (Instrument No. 63 at 142-148). The letter  states in part:

> If one is to read the text messages between you and [Roe] at face value, without any other information or context, it appears that you are admitting to having unprotected sex with her while knowing that you are a carrier of an incurable sexually transmitted disease that can be transferred to your partner by unprotected sex, and failing to disclose that information to her.

(Instrument No. 63 at 146). Thus, the University's decision was  based on unrebutted evidence about their encounter found in the text messages  between them and not his gender.

Moreover, the record also indicates that the University had a reasonable and non-discriminatory reason for prohibiting Plaintiff from its dorms and removing him from his classes. Plaintiff chose not to participate in the University's Police's investigation. (Instrument No. 63 at 37). Plaintiff also chose not to attend the University's SJP's February 14, 2018 meeting. (Instrument No. 63 at 32-33). The University's February 14, 2018 letter written by Dean Ostdiek indicates that Plaintiff was placed on an interim suspension, "based on the information available to [Dean Ostdiek] right now, including [Plaintiff's] text messages to [Roe] and [Plaintiff's] choice not to participate in Rice processes[.] There is no indication that [Plaintiff] will change this behavior going forward." (Instrument No. 63 at 37). Thus, Plaintiff's interim suspension was in part based on his lack of participation in the University's investigation.

Plaintiff's assertions about the disciplinary procedural process are also not evidence of gender bias. Plaintiff has not alleged that the University failed to follow the procedures outlined in its Code. (Instrument No. 79). Plaintiff also does not allege that the lack of a hearing was conducted or that his attorney was not allowed to participate, because Plaintiff is a male. Instead Plaintiff appears to express his dissatisfaction with the investigation procedures. Additionally, the record indicates that Plaintiff's then-attorney served as Plaintiff's support person and made a number of comments during SJP's Garza and Plaintiff's March 2018 meeting. Thus, Plaintiff has failed to establish that gender bias was the motivating factor. *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 212 (5th Cir. 2019), cert. denied, 140 S. Ct. 1268 (2020)(finding that where a university's disciplinary decisions were reasonable and justifiable on non-discriminatory grounds, an inference of gender bias in these circumstances would be speculative and not evidence of the erroneous outcome theory). Viewing the evidence, most favorable to the non-movant, the Court finds Plaintiff has not presented a fact issue on his erroneous outcome claim.

**2.**

Plaintiff alleged that the University treated him differently than Roe, his accuser because he is a man. (Instrument No. 1 at 28). The University argues that Plaintiff cannot establish a Title IX selective-enforcement claim because there is no evidence that it treated a female student similarly situated to Plaintiff better than it treated him. (Instrument No. 61 at 9-10).

To establish a selective enforcement claim Plaintiff must "allege that either [disciplinary] punishment or the decision to initiate enforcement proceedings was motivated by gender bias." *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 213 (5th Cir. 2019), cert. denied, 140 S. Ct. 1268 (2020).

Plaintiff argues that there is "selective enforcement of [U]niversity procedures to students of different sexes." (Instrument No. 79 at 26). Plaintiff makes a number of assertions about the investigation. Plaintiff asserts that during the investigation he informed Garza that Roe had unprotected sex with another student, failed to inform this student that she had herpes, and transmitted herpes to this student. (Instrument No. 79 at 26). Plaintiff contends that Garza refused to interview the other student and hold Roe accountable. *Id.* Plaintiff asserts that unlike himself, the University did not tell Roe to educate herself about the disease in order to sufficiently inform her sexual partners. *Id.* Plaintiff further contends unlike himself, the University officials did not discuss whether Roe posed a danger to other students. *Id.*

The Court notes Plaintiff makes a number of assertions without any citation to the record. (Instrument No. 79 at 26). As discussed above, the Court is not required court "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Even if Plaintiff had proffered evidence and cited to the record to

support his selective enforcement claim's assertions, he would fail to raise a material fact issue. In the Fifth Circuit, a selective enforcement claim is established by  evidence that the disciplinary punishment or decision to initiate enforcement proceedings was motivated by gender bias. *Klocke,* 938 F.3d at, 213. Plaintiff's response fails to address the Fifth Circuit's standard. (Instrument No. 79 at 26).

Additionally, the record before the Court does not support the contention that the University selectively enforced its procedures. Roe contacted SJP and filed a formal complaint against Plaintiff. (Instrument No. 63 at 21). No one filed a complaint against Roe alleging that she failed to disclose that she had herpes. (Instrument No. 83 at 4). Although the University handbook provides a number of sanctions including suspension and expulsion,  Plaintiff received social rustication for his violation. (Instrument No. 63 at 148). Nothing in the record indicates that Plaintiff received a harsher punishment because he was a male or that female students receive a lighter punishment. Additionally, Plaintiff has not presented any statistical or other evidence of gender bias. *Klocke,* 938 F.3d at 213 (analyzing a selective-enforcement claim based on statistical information). Thus, the Court finds that Plaintiff has not presented a fact issue on his selective enforcement claim.

### 3.

Plaintiff alleged that the University's decision to discipline him stems from its archaic assumptions that men in consensual, sexual relationships know more than women and have a greater responsibility to educate women about the risks of having unprotected sex with someone who has herpes. (Instrument No. 1 at 27). The University argues that Plaintiff cannot establish a Title IX archaic assumption claim because there is no evidence to support his claim. (Instrument No. 61 at 12).

Under the archaic assumption theory, a plaintiff must establish that a university's decisions were based on "archaic assumptions" or "outdated attitudes" about the roles or behavior of men and women. *Pederson v. La. St. Univ.*, 213 F.3d 858, 880-882 (5th Cir. 2000)(holding that a university persisted in intentional and differential treatment of women athletes when it declined to field women's fast pitch softball and soccer teams in the athletic program based on the university's outdated attitudes and archaic assumptions about women's abilities and interests in sports). Decisions and statements based on "remarkably outdated," "archaic,"  and "outmoded" assumptions will demonstrate that university "intended to treat" one "differently," when based on gender. *Id.* at 881 (finding evidence of the archaic assumption theory when a university official stated that soccer is a "more feminine sport" and that "the women might get hurt" in fast-pitch softball).

Plaintiff argues that the University's actions were based on archaic assumptions about gender. (Instrument No. 79 at 26-27). Plaintiff asserts that the University "assum[ed]" that "an adult female college junior or senior is incapable of understanding the risks of unprotected sex without the male educating her is part of such archaic thinking." (Instrument No. 79 at 27). Plaintiff contends that the University's refusal "to acknowledge that Roe had any accountability for her own action . . .is remarkably outdated." (Instrument No. 79 at 27). Additionally, Plaintiff argues that the University's refusal to hold Roe "accountable for the same conduct is outdated, archaic, and outmoded." *Id.* Plaintiff proffers Dean Ostdiek's actions and statement as evidence of the University's archaic assumptions. *Id.* Plaintiff argues that Dean Ostdiek's decision to impose a "banishment" of Plaintiff "without soliciting his response" for his conduct while stating that Roe's "identical conduct" would warrant "counseling" "because this is a very troubling time with a lot of life-changing decisions she has to make." *Id.*

The Court finds that Plaintiff failed to proffer evidence of a material fact issue. The record does not support Plaintiff's contentions that he was banished without solicitation of his response to Roe's complaint. The Court assumes that Plaintiff is referring to his interim suspension as the "banishment." First, the record indicates that on February 14, 2018, Dean Ostdiek placed Plaintiff on an interim suspension from the University in part because Plaintiff chose not to participate in the investigation process. (Instrument No. 63 at 37). On February 13, 2018, the University's SJP office informed Plaintiff that he needed to meet with Garza on February 14, 2018 at 11 a.m. to discuss a disciplinary matter. (Instrument No. 63 at 31). In her declaration, Garza stated that Plaintiff did not respond to her email on February 13, 2018. (Instrument No. 63 at 5, 31). Garza indicated that on February 14, 2018, she received a call from Brett Podolsky who said he was Plaintiff's attorney and that Plaintiff would not be attending the 11:00 a.m. meeting. *Id.* Plaintiff also sent Garza an email, stating that he would like to reschedule the meeting, because he wanted to obtain legal advice and be more prepared for the meeting. (Instrument No. 63 at 32). Additionally, in the same email, Plaintiff asked if he could at least have one week to prepare. *Id.* Thus, the evidence demonstrates that Plaintiff was not banished without solicitation of his response. Instead, the evidence reveals that the University solicited Plaintiff's response when Garza emailed him to discuss Roe's the complaint at the meeting scheduled for February 14, 2018. Plaintiff declined to attend the meeting. The University then placed Plaintiff on an interim suspension. Thus, Plaintiff's response mischaracterizes the University's decisions and initial investigatory actions. Additionally, Plaintiff repeatedly alleges that Roe engaged or intended to engage in conduct that is "identical" to the conduct the University charged him for. However, Plaintiff has not proffered any evidence of a report filed against Roe for the same conduct he was alleged and found to have committed. Moreover, the record is devoid of any evidence that indicates

that the University placed a different duty on male students to disclose the risks of unprotected sex then it does on female students. Plaintiff does not point to any statements that the University made to demonstrate that males had a different duty to disclose their herpes status. Thus, Plaintiff cannot establish that the University intentionally discriminated against him based on his gender. Thus, the Court finds that a t that Plaintiff has failed to raise a fact issue to establish his claim under the archaic assumptions' theory.

Accordingly, the University's Motion for Summary Judgment on Plaintiff's discrimination claim under Title IX is **GRANTED**. (Instrument No. 61).

### B.

Plaintiff brings a breach of express and implied contract claim and alleges that the University breached its disciplinary process. (Instrument No. 1 at 30). Plaintiff alleges that the University created a contract with Plaintiff when he "accepted an offer of admission" and "paid the tuition and fees." *Id.* The University argues that it is entitled to summary judgment on the breach of contract claim because Plaintiff cannot establish that a contract exists or that there was a breach. (Instrument No. 61 at 12).

Because the Court is sitting in diversity and this is a breach of contract claim, Texas law governs Plaintiff's claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

To establish a breach of contract, whether expressed or implied, a plaintiff must prove (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *See Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App. 2000); *Villarreal v. Wells Fargo Bank, N.A.,* 814 F.3d 763, 767 (5th Cir. 2016). The difference between contracts formed through express promises and those formed through implied promises is the means by

which the contracts are formed. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009). In an implied contract, a contract is formed when there is mutual assent that can be "inferred from the circumstances." *Id*. citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972).

The parties dispute whether there is a valid contract. The University argues that Plaintiff cannot establish that there was a valid contract between the University and Plaintiff. (Instrument No. 61 at 13). The University contends that the University's Code expressly states that it does not create contractual rights. (Instrument No. 61 at 13). Plaintiff contends that his acceptance of admission, payment of fees, and the University's policies providing that students are to have a fair and impartial disciplinary process demonstrates that the University created an express or implied contract. (Instrument No. 79 at 27). Additionally, Plaintiff contends Texas law recognizes an implied or expressed contract between a private institution and its students. *Id*. Plaintiff fails to cite any Texas case law to support his claim. *Id*.

The Court finds that Plaintiff cannot establish a breach of contract claim. Where there is an expressed disclaimer of a contract, it cannot be inferred that a party intended to be bound by a policy. *Tobias v. University of Texas at Arlington*, 824 S.W.2d 201, 211 (Tex. App. —Fort Worth 1991), cert. denied, 506 U.S. 1049 (1993) (finding an express disclaimer of a contract negates the inference of any intent to be bound by the university catalog). The record before the Court indicates that the University's Code states that "The procedures used in a University Court or College Court meeting or by SJP are not those used in court cases and are not intended to create contractual rights, including any rights to due process as that phrase is used in courts of law." (Instrument No. 63 at 80). Thus, the Court finds that the University's Code expressly disclaims that it provides or creates a contract.

26

Plaintiff is correct that Texas Courts have found a contract to exist, where a private university impliedly agreed to provide an educational opportunity and confer the appropriate degree in consideration for a student's agreement to successfully complete degree requirements, abide by university guidelines, and pay tuition. *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 356 (Tex. App. 1998). However, even if the Court were to find that an implied contract existed between the parties, Plaintiff cannot establish that the University breached this contract when it conducted its disciplinary investigation. *Law v. William Marsh Rice Univ.*, 123 S.W.3d 786, 793 (Tex. App. 2003) (finding no evidence of breach of the implied contract of a private school educational opportunity where, the plaintiff alleged that there was a breach of the disciplinary process).

Additionally, Plaintiff argues there is a breach of contract because he did not receive any procedural guarantees such as a right to present witnesses, experts, evidence, and confront and cross-examine his accuser. (Instrument No. 79 at 28). To support his contention, Plaintiff's cites two cases in the District of Connecticut. (Instrument No. 79 at 28). The Court reviewed the cases cited by Plaintiff. In both cases those courts found that there was evidence or sufficient allegations of a breach of contract where the plaintiff alleged "specific" promises in the university's policies were breached. *Doe v. Quinnipiac University*, 403 F. Supp. 3d 643, 667-72 (D. Conn 2019); *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 96-97 (D. Conn. 2000). However, this is not the case here. Plaintiff does not specifically allege or identify any provision of the Code or another University policy that was breached. Instead, Plaintiff appears to be arguing that the Code itself is inadequate, because he was not afforded his preferred disciplinary process. As discussed above, the Code expressly disclaims that it provides students with a contractual right to a certain disciplinary process. Plaintiff has not proffered any evidence and there is none in the record that demonstrates

that the University breached any contract. Thus, the Court finds that Plaintiff has failed to raise a fact issue to establish his breach of contract claim.

Accordingly, the University's Motion for Summary Judgment on Plaintiff's breach of contract claim is **GRANTED**. (Instrument No. 61).

### C.

The University also moves for summary judgment on the basis that Plaintiff failed to provide mandatory computations for damages and thus lacks evidence of his damages arising from his discipline. (Instrument No. 61 at 15). Plaintiff contends that it informed the University of his damages even if Plaintiff did not use a specific calculation. However, given that the Court has found that Plaintiff claims fail on the merits, it need not resolve the issue of damages.

### V.

For the foregoing reasons, **IT IS HEREBY ORDERED** that the University's Motion for Summary Judgment is **GRANTED**. **(Instrument No. 61)**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the _____ day of September, 2021, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**