IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN DOE, § § *Plaintiff* § § vs. § § WILLIAM MARSH RICE UNIVERSITY § d/b/a RICE UNIVERSITY, § § *Defendant.* § | Civil Action No. 4:20-cv-02985 |

**PLAINTIFF'S DAUBERT MOTION TO STRIKE**

COMES NOW, Plaintiff, John Doe and files this Motion to Strike a portion of the expert testimony/report of Defendant's expert Dr. Dwight Steward pursuant to Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S. Ct. 2786 (1993), and its progeny.

## I. BACKGROUND

1. This is a case brought pursuant to Title IX based on gender discrimination. The Plaintiff is a former Freshman student and football player for Rice University.

2. This case arises out of a consensual sexual relationship between two University students who were briefly dating—John Doe (18 years old at the time) and Jane Roe (21 years old at the time). After John Doe and Jane Roe broke up, Jane Roe complained to Rice University that she, allegedly, contracted herpes as a result of their sexual relationship.

3. Doe was suspended and convicted of, essentially, knowingly and maliciously transmitting genital herpes to fellow Junior student, Jane Roe, despite Jane Roe (a) having consensual,

unprotected intercourse with John Doe on multiple occasions, and (b) freely acknowledging that John Doe had, in fact, informed her of his prior contraction of genital herpes while he was in high school. Rice University determined that it was the province of the university to oversee, adjudicate, and pass judgment on all things related to the consensual sexual intimacy of its adult students in favor of a female student and adverse to a male student, based upon gender considerations. Rice University revoked Doe's scholarship and forced him to terminate his education at Rice. Doe sued pursuant to Title IX.

4. The Defendant has designated an economist, Dr. Dwight Steward, as an expert who has opined about issues relating to Plaintiff's likely success as a Rice University student and his career path. Dr. Steward is not qualified to render such opinions and his opinions are not based upon reliable authority and, indeed, are directly contradicted by the one reliable source cited in his report.

## II.   APPLICABLE LAW

5. Federal Rule of Evidence 702 allows expert testimony to be admitted that assists the trier of fact to understand the evidence or determine a fact in issue. Fed. R. Evid. 702. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

6.      When asked to do so, a district court must make a preliminary determination as to whether the requirements of Rule 702 are satisfied with respect to a particular expert's proposed testimony. *See Daubert*, 113 S. Ct. at 2796 (citing Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, ... or evidence is admissible."). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 119 S. Ct. 1167, 1176 (1999). The party offering the expert's testimony bears the burden of proving by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. Daubert, 113 S. Ct. at 2794. *See also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("[E]xpert testimony is admissible only if it is both relevant and reliable.").

7.      To be qualified an expert "witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004), *cert. denied*, 126 S. Ct. 1022 (2006).  To be reliable the reasoning or methodology underlying the expert's testimony must be scientifically valid. Id. "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc), *cert. denied*, 119 S. Ct. 1454 (1999).

8.      The Fifth Circuit has recognized that Daubert articulated a non-exclusive, list of flexible criteria for determining reliability, including:  (1) whether the expert's theory can be or has been

Plaintiff's *Daubert* Motion                                                                                                      3

tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998).

9.     As shown below, Dr. Steward's opinions regarding Plaintiff's likely career paths/success at Rice are not reliable and not helpful. Dr. Steward is not qualified to opine that Plaintiff would not have had a successful career path at Rice, including graduate school, and comparing his career path at A&M Commerce (paragraphs 28 through 55 of his report). In forming his opinions on Plaintiff's career path, Dr. Steward failed to include reliable authority other than one peer reviewed article and actually contradicts the one authoritative source cited. Further, Dr. Steward's opinions cannot assist in the determination of Plaintiff's career path because he admits he is not qualified to opine on vocational issues. For these reasons, Dr. Steward's opinions on Plaintiff's career path are not helpful and not reliable, and should be excluded.

    **III.     CASES EXCLUDING DR. STEWARD'S OPINIONS AS UNRELIABLE**

10.     In *United States v. City of Houston, Texas*, 2020 WL 2516603 (S.D. Tex. May 15, 2020), Dr. Steward's opinions regarding a plaintiff's future employability were addressed by District Judge Sim Lake. The plaintiff objected that such opinions were "not reliable because he is an economist and statistician unqualified to render opinions as to her future employability. The court agrees." (*Id*. at *10). The court noted that "Dr. Steward acknowledged that he typically relies on a vocational expert to tell him what jobs the injured party can do…". (*Id*. at *11). The

court concluded that Dr. Steward's opinions were "neither relevant nor reliable" and the motion to exclude his testimony was granted. (Id. at *12, *40). Appx. 255.

11. In *Slack v. Swift Transportation Co.*, 2017 WL 3503345 (W.D. Wash. Aug. 16, 2017) "the Court agrees with Swift that Dr. Steward's comparison based on BLS data is unreliable. Dkt 264 at 12-14. Even if this opinion was provided as a "cross-check" of Ms. Sabbels' wage calculations, the limited relevanc is substantially outweighed by the potential of confusing the issues and misleading the jury. Fed.R.Evid. 403." Appx. 247

12. In *Pierce v. Wyndham Vacation Resorts, Inc.*, 2017 WL 10436071 (E.D. Tenn., Oct. 6, 2017), Dr. Steward's expert report was stricken in its entirety. The court found that Dr. Steward had "not extracted the data and facts that are necessary for a final analysis" [*Id*. at *4] and that his report contained a "blanket, conclusionary" statement. [Id. at *5]. Appx. 241

## IV. DR. STEWARD'S OPINIONS ON PLAINTIFF SHOULD BE EXCLUDED

13. Dr. Steward provides forensic services as an economist and statistician. Appx. 5/8-17. He is not a vocational expert. A vocational expert is a professional who analyzes a person's ability to work, considering their medical conditions, skills, education, work experience, and available job market.

*Q. So you would agree with me that you are not a*
*2 vocational expert?*
*3      A. Yes, ma'am, I would very much agree with that,*
*4 yes.*
Appx. 4

He has never investigated a Title IX expulsion or its effect on a student, has never published anything on the subject, and has never published anything regarding overcoming educational catastrophes or relating to higher education planning. Appx. 5-6

Plaintiff's *Daubert* Motion                                                                                             5

14.     In paragraphs 31 and 32 of his report [Appx. 29], Dr. Steward states "[Plaintiff's expert] does not point out that Plaintiff's SAT score and high school class rank are not typical of students at a top school, but are almost exactly typical of students at Texas A&M Commerce, from where he graduated." He goes on to talk about Plaintiff's SAT score being the median score of students admitted to TAMC and his likelihood of completing a rigorous academic program. He further states that "[Plaintiff] was not prepared academically for the rigors of any of the other majors available at Rice that would have been a logical path to the business career." However, the article that Dr. Steward cites as a reliable authority states that "an academic study released last summer showed little relationship between high school grade point average and success in college." Appx. 99-100. Furthermore, he does not account for the fact that students with higher SAT scores generally get accepted at premier universities, which can account for post-college success and which would actually support Plaintiff's claims as he was accepted on a scholarship to a premier university. The report that Dr. Steward cites as a peer reviewed and reliable authority, "The Determinants and Causal Effects of Admission to Highly Selective Private Colleges," clarifies that higher SAT scores will get into higher ranked colleges which correlates to post-college success, so it is not reasonable to conclude that SAT scores alone determine post-college success for a student on a scholarship to a higher ranked college. Appx. 101

15.     Par. 43 of Dr. Steward's report states that "nothing in Plaintiff's high school transcripts suggests that he would be likely to succeed in a heavily quantitative course of study at a top university." Appx. 33. His statement is directly contradicted by the report he purportedly relied upon which finds "little relationship between high school grad point average and success in college." Appx. 99. Furthermore, Dr. Steward could not cite to any authority for his proposition

Plaintiff's *Daubert* Motion                                                                 6

that there is a correlation between Plaintiff's high school grades and his likelihood of success with any path of study at Rice. Appx. 16/12-19

16. Dr. Steward could offer no authoritative support for an opinion that someone with a degree from a community college had equal or greater earning potential than someone with a degree from a premier university like Rice.

```
 Q.  Yes, sir, Dr. Steward, and I'm asking you to
 2  list for me each study that you're aware of that shows
 3  that someone with a degree from a community college
 4  has the earning potential that is equal to or greater
 5  than someone with a degree from a college like
 6  Rice University.  Just name me the studies, and I'll
 7  write them down on a piece of paper.
 8       A.  Sure.  Ma'am, obviously, I'm not – I don't
 9  have anything with me here today to – to give you
10  those, but they're – they exist.  And – and,
11  obviously, I'm not going to say – if they want me to
12  provide them, I'm happy to provide them.  But as I sit
13  here now, I'm not – I can't give you a list of all of
14  those studies or even the data.
15             You can just go look at the salaries
16  of these – that these people earn, from the BLS,
17  for example, and you'll see what – what the earnings
18  capability is of these.  And not only that, you've got
19  to consider the – the stability of those jobs versus
20  these other types of jobs.
```
Appx. 13

17. Dr. Steward could not cite any authority other than "The Determinants and Causal Effects of Admission to Highly Selective Private Colleges" that relate SAT scores to success after college. Appx. 14/23-15/18. However, the article upon which Dr. Steward relies actually concludes that being admitted to an Ivy-Plus college increases a student's chances of achieving success, both monetarily and non-monetarily. Appx. 101.

Plaintiff's *Daubert* Motion                                                                                   7

18.     Dr. Steward criticizes Plaintiff's high school grades and SAT scores. However, it is notable that Dr. Steward's authoritative source finds that "the marginal student who is admitted to and attends an Ivy-Plus college, instead of the average highly selective public flagship, is about 60 percent more likely to reach the top one percent of the income distribution at age 33, nearly twice as likely to attend a highly ranked graduate school, and three times as likely to work at a prestigious firm." Appx. 101. This finding <u>directly contradicts</u> Dr. Steward's opinions and supports those of Plaintiff's experts.

19.     Dr. Steward's report completely ignores the findings in his authoritative source that students who attend premier colleges instead of "flagship" colleges "are significantly more likely to reach the top 1% of the income distribution, attend an elite graduate school, and school, and work at prestigious firms." (Appx. 101-02).

## V.     CONCLUSION

20.     Dr. Steward is not qualified to render opinions regarding Plaintiff's career trajectory and/or likelihood of post-college success in this case. His opinions are conclusory and unreliable as well as contradicted by the study that he provided as a reliable source. His opinions, particularly those in paragraphs 28 through 55 (as well as those in his "Overview" and summaries relating to Plaintiff's expert Stotland) should be stricken.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays that the Court grant this motion and strike those opinions of Dr. Steward relating to Plaintiff's success in college and post-college.

Respectfully submitted,

/s/Susan E. Hutchison
SUSAN E. HUTCHISON
State Bar No. 10354100
sehservice@FightsforRight.com

HUTCHISON & FOREMAN, PLLC
500 East 4th St., Ste. 100
Fort Worth, Texas 76102
T: (817) 336-5533
F: (817) 887.5471

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on this April 25, 2025, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties.

Russell Hardin, Jr.
Terry D. Kernell
Emily M. Smith
Rusty Hardin & Associates, LLP
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010

/s/ *Susan E. Hutchison*
Susan E. Hutchison