IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:20-cv-02985 |
| | § | |
| WILLIAM MARSH RICE | § | |
| UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT WILLIAM MARSH RICE UNIVERSITY'S ("RICE")
RESPONSE TO PLAINTIFF JOHN DOE'S ("DOE")
<u>DAUBERT MOTION TO STRIKE (DKT. 117) ("MOTION")</u>**

Doe's Motion to strike parts of the testimony of Rice's expert, Dr. Dwight Steward, should be denied.

## I.
## <u>INTRODUCTION</u>

Doe's alleged damages are his "lost earning capacity from the date he lost his full scholarship to Rice University through his projected retirement date." Dkt. 120-5 (Needham Report) at 1. Those damages could be substantial. Rice is indisputably an elite university.

It is equally undisputed that academically Doe was not a typical Rice student. To be fair, very few are. In high school, he took no advanced mathematics courses or Advanced Placement Courses. He graduated in the middle of his high school class

with an SAT score of 1050. He did not participate in the International Baccalaureate program. He was not involved in extracurricular or other activities showing an interest in any academic disciplines. His transcripts post-Rice suggest his high school transcript or test scores were consistent with his academic abilities.[1]

Doe faces a dilemma—how does he prove damages allegedly suffered from allegedly being deprived of an education at Rice, calculated as if he was an academically typical Rice student, when all of the evidence shows he was not?

He is doing it in two ways. First, he inflated his alleged damages by assuming things he cannot possibly prove. Rice has already briefed some of the issues with Doe's damages calculations in its own Daubert motion. *See* Dkt. 119 (Rice MSJ and Motion to Strike) at 10-14. Now, he is claiming that success at an elite university depends on one thing—admission, that the things typically associated with such success that he lacks—high SAT scores, high school Advanced Placement courses, extra-curricular activities, and the like—are irrelevant, and Dr. Steward's testimony to the contrary should be excluded because he is not a "vocational expert."

Doe's motion demonstrates either a profound misunderstanding of the subject matter, or a calculated attempt at confusing the issues. It is so riddled with inaccuracies, mischaracterizations, and misunderstandings that is impossible to

---

[1] These are plain statements of relevant facts as proven by the evidence, not statements of judgment.

point them all out without producing a separate expert report. But one example illustrates the larger problem.

Doe's alleged damages from not graduating from Rice start by estimating two amounts. One is the amount he would have made if he entered the workforce after graduating from Rice with a bachelor's degree. The other is what he would have made if he stayed at Rice two more years to get his MBA as well and then went to work. *See* Dkt. 120-5 (Needham Report) at 3.

Both cases assume Doe would have stayed and graduated from Rice, and are therefore speculative. The latter is pure farce. The average Rice MBA student has seven years of work experience between college graduation and admission to the program.[2] Doe's calculation assumes immediate admission to one of the most elite MBA programs in the country. Doe's response? Not that his abilities would allow it. Instead, he is moving to prevent Dr. Steward from discussing this—and presumably every other fact bearing on whether Doe would or "would not have had a successful career path at Rice, including graduate school…"—because Dr. Steward "is not qualified to opine on vocational issues." Motion, ¶ 9. Absurd does not do the argument justice.

The remainder of Doe's arguments are of similar ilk. Whatever their defects, none are viable. His motion should be denied.

---

[2] http://business.rice.edu/mba-admissions/guide/frequently-asked-questions.

# II.
# ARGUMENT

**A.     Doe's damages calculations.**

Doe alleges his damages are his "lost earning capacity from the date he lost his full scholarship to Rice University through his projected retirement date." Dkt 120-5 (Needham Report) at 1. He designated two experts to prove them—Admissions Consultant Hanna Stotland, and economist Dr. Allyn Needham. *See* Doe Disclosures at 1-2.[3]

Dr. Needham calculates Doe's alleged damages under two sets of assumptions. In one, Doe graduates from Rice with a bachelor's degree in Spring 2022, enters the workforce on July 1, 2022 earning $64,400 per year, his earnings increase linearly to $86,400 by 2031, and he continues earning that amount until 2060. Dkt 120-5 (Needham Report) at 4. In the other, instead of entering the workforce in July 2022 with a bachelor's degree, Doe continues his education, entering the workforce on July 1, 2024 with a Rice MBA earning $123,200 per year, and continues earning that amount until 2060. *Id.* at 5.[4] The same projection of Doe's

---

[3] Exhibit 1 to the declaration of Terry Kernell ("Kernell Decl."), which is attached to this response as Exhibit A. The Kernell Declaration and each of its exhibits are incorporated herein by reference.

[4] $64,400 and $86,400 are, respectively, the purported average salaries of people with a Rice bachelor's degree six years after enrolling, and ten years after graduating. $123,200 is the average of all Rice MBAs. Dr. Needham obtained these numbers from the website collegesimply.com. *See* Dkt. 120-5 (Needham Report) at 3-5.

income as a Texas A&M-Commerce graduate with a bachelor's degree is subtracted in both scenarios to arrive at an alleged net loss. *Id.* at 5-6.

The first assumption in both scenarios is Doe obtaining a bachelor's degree from Rice in Spring 2022. Dr. Needham's report refers to Ms. Stotland's report twice, *id.* at 3, but does not use any information from it in his calculations, *see id.*, *passim*. That's just as well. Ms. Stotland's report does not address, to say nothing of opine on, whether or when Doe would have graduated from Rice. *See* Dkt. 120-4 (Stotland Report), *passim*.

**B.     Dr. Steward's opinions.**

Dr. Steward was designated to "review and opine on the opinions offered by the experts [Doe] has designated to testify as to economic damages, and to offer any other opinions within his area of expertise he may form during that process that are relevant to the issues in this case and helpful to a jury." Rice Disclosures at 2.[5]

As a Ph.D. labor economist and statistician hired to respond to Doe's experts, Dr. Steward points out flaws in Doe's damages analysis. Those flaws include some, but by no means all, of the facts Doe's experts ignore in ***assuming*** the foundation for their damages calculations—that Doe would have graduated from Rice with a bachelor's degree in the Spring of 2022, and with a Rice MBA two years later. He particularly focuses on how facts available to Dr. Needham and running contrary to

---

[5] Kernell Decl., Ex. 2.

those assumptions were ignored in favor of employing assumptions the facts contradict. *See* Dkt. 120-6 (Steward Report), *passim*.

**C.     Doe's motion to strike.**

Doe now seeks to exclude specific criticisms Dr. Steward has expressed, characterizing them as unhelpful and unreliable "opinions" regarding "Plaintiff's likely career paths/success at Rice," that "Plaintiff would not have had a successful career path at Rice, including graduate school," and "comparing [Doe's] career path at A&M Commerce." Motion, ¶ 9. Doe says they are not reliable and not helpful because in forming his "opinions," "Dr. Steward failed to include reliable authority other than one peer reviewed article and actually contradicts the one authoritative source cited," and "admits he is not qualified to opine on vocational issues." *Id*.

**1.     Doe is challenging weight, not admissibility.**

Before turning to the specifics of Doe's motion, it is important to note that Doe is not actually challenging any Dr. Steward's opinions on admissibility grounds under *Daubert*. His qualifications cannot legitimately be questioned, especially once Doe's strawman "economic" versus "vocational" distinction is exposed. Doe does not challenge the validity, accuracy, or reliability of any methodologies Dr. Steward employs. Instead, it appears that Doe's counsel—rather than his expert Dr. Needham—is challenging Dr. Steward's conclusions based on what can be

6

charitably called different interpretations of the available economic literature and data.

As demonstrated below, and as Dr. Steward cautioned against at his deposition, those "disagreements" arise from Doe improperly applying, limiting, and at times simply ignoring contrary information. Rather than review all of the information holistically in determining what any given part means, in isolation or in the context of the literature at large, Doe purports to demonstrate Dr. Steward's opinions as unreliable by quote-picking statements devoid of context, and therefore of any real meaning in or relevance to the analysis being conducted.

Labor economics is not a discipline of dueling click-bait headlines. Doe's reliance on isolated and non-contextual statements as evidence of the reliability or unreliability of anything is woefully misplaced, proving nothing as it has been presented.

### 2. Dr. Steward is not offering any "vocational" opinions as a rebuttal expert.

An excellent example of this issue, and as good a place to start as any, is Doe's assertion that Dr. Steward is not a "vocational expert." That statement is true. And utterly irrelevant. Doe himself describes "[a] vocational expert [a]s a professional who analyzes a person's ability to work, considering their *medical conditions*, skills, education, work experience, and available job market." Motion, ¶ 13 (emphasis added). This is not a case involving an injury, nor are there any vocational or medical

issues. Dr. Steward is not proffering any vocational opinions because this is not a vocational opinion case.

And, Dr. Steward is a rebuttal expert. As is true for all rebuttal experts and their reports, his job was to react and respond to Plaintiffs' experts reports, to challenge and refute them, to disprove or weaken their claims, or identify flaws and inconsistencies. It was not to draft a detailed research treatise on Plaintiffs career outcomes. It was also not to respond to arguments Doe's experts did not make. Under Doe's own interpretation of "vocational issues," his experts' reports raised no such issues. Motion, ¶ 9. Neither did he.

**3.     Dr. Steward is qualified to provide all of his proposed testimony.**

Dr. Steward's agreement he is not a vocational expert imposes no limits on the scope of his testimony in this case, because this is an economics case, and he is very definitely an economics expert.

As to his qualifications in that regard, and before any focus on his work as a labor economist specifically, Dr. Steward is a Ph.D. economist and statistician. He earned his doctorate in Economics from the University of Iowa, and holds a B.A. in Economics from the University of Texas at Austin. See Dkt. 120-6 (Steward Report), Ex. B. He has testified in over 270 cases in federal and state courts and arbitral proceedings around the country since 1997, and has been involved in over 2,000

cases. *Id.* at 12-48.[6] He has written two economics textbooks—ECONOMIC LOSSES AND MITIGATION AFTER AN EMPLOYMENT TERMINATION: THEORY, APPLICATIONS, AND CASE STUDIES (Palgrave MacMillan January 2022), and STATISTICAL ANALYSIS OF EMPLOYMENT DATA IN DISCRIMINATION LAWSUITS AND EEO AUDITS (Econometrics Publishing February 2010)—and co-wrote a third, Dwight Steward and Roberto Cavasos, BIG DATA ANALYTICS IN U.S. COURTS: USES, CHALLENGES, AND IMPLICATIONS (Palgrave Pivot Publishing December 2019). *Id.* at 9. His CV lists 18 other less voluminous publications. *Id*. at 8-10. He taught more than 30 economics classes to hundreds or thousands of graduate and undergraduate students over the years, advising and mentoring many of them. He published, presented, and spoke on areas as diverse as racial profiling in law enforcement, racial differences in interest rates, the work life expectancy of undocumented Mexican workers, and economic damages for previously incarcerated individuals to valuing stock options, valuing economic damages in injury and employment cases, statistical, survey, and data issues in wage and hour cases, calculating damages in wage and hour cases, and the use of experts in class/collective litigation. *Id*. at 2-7. He was appointed by the United States District Court for the Eastern District of California, first as a technical advisor to the Special Master appointed by that Court to analyze the defendants'

---

[6] In context, the three cases cited in Doe's motion raise no reasonable doubt as to his expertise and proficiency. More to the point, none involved any of the issues at issue in this case.

compliance with court orders requiring adequate mental health staffing in California prisons, and then as a technical advisor to the Court itself "to assist it in understanding certain issues related to labor economics the parties will raise…". *Coleman v. Newsom*, No. 2:90-cv-0520 KJM DB P, 2023 WL 6282900, at *1 (E.D. Cal. Sept. 26, 2023).

With respect to labor economics in particular, Dr. Steward's work addresses likely labor market trajectory based on educational attainment, academic preparedness, and earning potential—in other words, the areas in which Doe is claiming he is unqualified. His professional training and experience as a labor economist includes a focus on the dynamics of labor markets, the supply and demand for labor and employment, the effects of education on wages, and related economic and social factors. Like most labor economists, he analyzes how workers, employers, and government policies interact within the labor market and how these interactions impact economic outcomes. He has a long interest and body of work as an expert in human capital and the labor market outcomes of all workers, particularly members of the minority community. He has testified and submitted reports in hundreds of cases involving labor market projections, education-based earnings differentials, and employability analyses.

Doe's allegations that he did reflect another fundamental misunderstanding of his role by Doe. Critiquing the economic damages analysis performed on Doe's

10

behalf is well-within his areas of expertise and competence, including meaningfully opining on the reasonableness of the assumptions employed in those calculations.

### 4. All of Dr. Steward's opinions and testimony is admissible.

Doe cannot avoid Dr. Steward's criticisms of his experts' work by recharacterizing his opinions as "vocational" rather than "economic." He is not, as Doe alleges, offering unsupported expert opinions, or opinions outside his areas of expertise. He points out facts material to the reliability of Doe's economic damages calculations and explains how or why they undermine Doe's assumptions. That is entirely appropriate. Doe's decision to have his experts offer a late "I would have graduated in Spring 2022" opinion does not convert facts material to Doe's damages calculation, on which Dr. Steward is qualified to comment, into facts material only to a "vocational" analysis, on which he allegedly is not.

Doe is raising this issue in hopes of saving late opinions from unqualified experts that he would have graduated from Rice at the times and with the degrees Dr. Needham assumes from the criticisms Dr. Steward levels at those assumptions. Recharacterizing them as "vocational opinions" does not insulate them from that criticism, or save Doe's calculations.

### 5. Responses to Doe's specific criticisms.

Doe's motion levels several specific accusations against Dr. Steward and the validity of his statements and conclusions. All are based on—at best—distortions of

his opinions, his testimony, his sources, or combinations of each. Rice addresses and dispels some of them below. The remainder fail for similar reasons.

### a.     High school GPA does not predict college success.

Doe's primary argument seems to be that his atypical (for Rice) high school GPA is not predictive in any way of his potential success at Rice, based on a single sentence in the Chetty study: "An academic study released last summer by the group Opportunity Insights, covering the so-called Ivy Plus colleges (the eight in the Ivy League, along with Duke, M.I.T., Stanford and the University of Chicago), showed little relationship between high school grade point average and success in college." *See* Motion, 14. Doe omits the next sentence in the cited study: "The researchers found a strong relationship between test [SAT] scores and later success." Doe's SAT score is highly predictive of college success. It does not predict success by Doe at Rice.

### b.     Grades versus transcript.

Doe misrepresents Dr. Steward's opinion about the predictive power of his high school transcript by replacing "transcript" with "grades." *See* Motion, ¶ 15. His actual opinion, concerning Doe's transcript, which includes much more than grades, is not contradicted by the source cited.

### c. Community college versus Rice.

Doe mischaracterizes Dr. Steward's claim as a general one in order to ostensibly defeat it. His actual claim stands.

### III.
### CONCLUSION

Rice respectfully requests that Doe's motion to strike portions of Dr. Steward's opinions and testimony be denied, and that it be awarded all legal, equitable, general, and special relief to which it is entitled.

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES, LLP**

*/s/ Russell Hardin, Jr.*
Russell Hardin, Jr.
State Bar No. 08972800
Federal I.D. No. 19424
rhardin@rustyhardin.com
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

**ATTORNEY-IN-CHARGE FOR DEFENDANT WILLIAM MARSH RICE UNIVERSITY**

**OF COUNSEL:**
Terry D. Kernell
State Bar No. 11339020
Federal I.D. No. 15074
tkernell@rustyhardin.com

Emily M. Smith
State Bar No. 24083876
Federal I.D. No. 18906776esmith@rustyhardin.com
**RUSTY HARDIN & ASSOCIATES, LLP**
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

**ATTORNEYS FOR DEFENDANT
WILLIAM MARSH RICE UNIVERSITY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of May, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties.

>  */s/ Terry Kernell*
> Terry Kernell