IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:20-cv-02985 |
| | § | |
| WILLIAM MARSH RICE | § | |
| UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT INCLUDING ATTORNEY'S FEES

Plaintiff ("Doe") has moved for entry of judgment on the jury's verdict and requests interest and attorney's fees. *See* Dkt. 162 ("Motion"). Defendant William Marsh Rice University ("Rice University") will raise appropriate objections in post-judgment motions. At this stage, Rice University wishes to apprise the Court of errors in the judgment Doe seeks, specifically:

- **Doe's requested damages exceed what Title IX allows**. Doe is limited to compensatory contract damages. He is not entitled to recover both the cost of a Rice University education—the amount of his scholarship—and the future value of that education. Recovering both results in a prohibited windfall.

- **Doe's requested prejudgment interest is inaccurate**. An incorrect rate, incorrect dates, and incorrect lost earnings amounts improperly inflate the interest amount. In addition, no interest should accrue on his invalid "loss of scholarship" damages.

1

- **Doe's requested attorney's fees are unsupported**. Doe has not met his burden to prove the lodestar factors. In addition, he is not entitled to the equivalent of a 40% contingent fee as an enhancement to a lodestar amount.[1] That fee is prohibited by Supreme Court and Fifth Circuit precedent.

Rice University is submitting its own form of judgment in compliance with the Court's request as Exhibit 1 to this Response. Rice University is not conceding the propriety of any of the proposed relief therein.

## ARGUMENT

### A.    Doe's requested damages violate Title IX.

Doe is limited to traditional breach of contract remedies under Title IX. Those remedies do not include recovering both (1) costs he never incurred, or would have incurred, in obtaining a Rice University degree ("loss of scholarship"); and (2) the lifetime economic benefit of obtaining that degree ("loss of earning capacity"). This Court should refuse Doe's request for the loss of scholarship damages.

### 1.    A Title IX plaintiff is entitled to compensatory contract damages.

Title IX is a Spending Clause statute, *see Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217-18 (2022), creating a relationship between the government and a funding recipient "much in the nature of a contract," *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17 (1981).  Accepting funds exposes a recipient to "remedies explicitly provided in the relevant legislation" as

---

[1] *See generally* Dkt. 162 (Motion) at 2.

well as "remedies traditionally available in suits for breach of contract." *Barnes v. Gorman*, 536 U.S. 181, 187 (2002).

"Title IX[] . . . contains no express remedies . . . ". *Id.* Thus, a Title IX plaintiff may recover only "those remedies traditionally available in suits for breach of contract." *Id*. One such remedy is compensatory damages. *Id*. "'When a court concludes that a recipient has breached its contract, it should enforce the broken promise by protecting the expectation that the recipient would not discriminate. ... The obvious way to do this is to put private parties in *as good a position* as they would have been had the contract been performed.'" *Id*. at 189 (quoting *Guardians Assn. v. Civil Serv. Comm'n of New York City,* 463 U.S. 582, 633 (1983) (Marshall, J., dissenting) (emphasis added)).

The principle of compensating—but not over-compensating—plaintiffs suing under Spending Clause legislation is consistent with the broader federal common law prohibiting duplicate compensatory recoveries. "The prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby." *United States v. Behan*, 110 U.S. 338, 344 (1884). But "courts can and should preclude double recovery...". *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002).

> **2.** **Doe's requested damages put him in a *better* position than if he had graduated from Rice.**

Doe's proposed judgment seeks $1,324,447.00 in compensatory damages—"$271,230.00 for loss of scholarship and $1,053,217.00 for loss of earning capacity . . . ".[2] Doe calculates the $271,230 "loss of scholarship" as the amount of Doe's unused scholarship—the total cost of attending Rice for five years, less the one year he completed.[3]

That theory improperly converts an athletic scholarship from an in-kind educational benefit into a cash payment. The scholarship relieved Doe of the obligation to pay tuition and other educational expenses. It was not a promise to provide both a free Rice University education *and* the $341,540 cash equivalent of that education's cost.[4] Had Doe remained at Rice University, graduated, and fully utilized his scholarship, he would have received a degree without paying those costs—not a degree plus $271,230 in cash.[5]

---

[2] *See* Dkts. 162 (Motion) at 2; 162-1 (proposed judgment), ¶ 2.

[3] *See* Dkt. 162-2 (verdict) at 18 ("Loss of scholarship  Answer: $271,230.00"); *see also* Plaintiff's Ex. 40 (Bailiff letter). That letter lists the five year cost of attendance of $341,540 and the cost of one year at $70,310.50. Setting aside the $0.50, $341,540 - $70,310 = $271,230. That letter also confirms that every scholarship dollar was allocated to educational expenses.

[4] His Grant-in-Aid was not $341,540 either. It was awarded and renewed one year at a time. *See* Plaintiff's Ex. 8 (Grant-in-Aid) at 1 ("Period of Award: Begins: <u>August 2017</u> and extends through <u>May 2018</u>. . . ."), 2, ¶ 2 ("The renewal of athletics financial aid that expires at the end of an academic year must be made on or before July 1 prior to the academic year it is to be effective.").

[5] Had he, both Doe and Rice University would have been in violation of the NCAA's compensation rules: "When athletically related financial aid is awarded to a student-athlete, such aid combined

The flaw becomes even more apparent when the scholarship award is considered alongside Doe's claim for lost earning capacity. The alleged loss of earning capacity is, by definition, the economic benefit Doe contends he would have realized by obtaining a Rice degree.  A plaintiff cannot recover both the costs of acquiring an asset and the value of the asset itself. Doing so would compensate the plaintiff twice for the same alleged loss.

An analogy illustrates the point.  If a seller wrongfully refuses to transfer a share of stock, the buyer cannot recover both the purchase price of the stock and the stock's present and future value. The purchase price is the cost of obtaining the asset; the market value reflects the benefit of owning it.  Awarding both would leave the plaintiff better off than if the transaction had occurred.

Doe effectively conceded this distinction at trial. In closing arguments, his counsel told the jury that any scholarship award should exclude the amount already used to pay for Doe's freshman year expenses.[6] If Doe cannot recover the amount of his scholarship he received in kind to pursue a Rice University degree, he certainly cannot recover amounts never granted in kind. That concession recognized that

---

with other permissible financial aid the student athlete receives may not exceed the value of the institution's cost of attendance per academic year." *Id*. at 2, ¶ 3.

[6] *See* Exhibit 3 (April 14, 2026 Rough Transcript) at 54, ll. 3-10 ("So for the [$]341[,]540, take out the first year… that amount was actually paid for his first year so that comes out of the amount for the scholarship."). Transcript excerpts from April 8 and April 14, 2026 are filed with this response as Exhibits 2 and 3 respectively.

5

scholarship funds used to obtain a Rice University education are not separately recoverable as damages. By the same reasoning, scholarship funds that were never expended (because Doe did not continue at Rice University) cannot be transformed into a cash award now.

Doe's proposed judgment would award both the unused cost of obtaining a Rice University degree and the lifetime economic value he attributes to that degree. Had events unfolded as Doe contends they should have, he would have received one, not both. Awarding both categories of damages would place Doe in a better position than performance would have, resulting in a windfall rather than compensation.

## B.  Doe miscalculates prejudgment interest.

Doe is not entitled to the $148,348.55 in prejudgment interest he requests.[7]

### 1.  Prejudgment interest is not automatic.

"[F]ederal law governs the range of remedies, including the allowance and rate of prejudgment interest, where a cause of action…arises out of federal statute." *Carpenters Dist. Council v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994). "[T]he 'allowance of interest on damages is not an absolute right. Whether it ought or ought not to be allowed depends upon the circumstances of each case, and rests very much in the discretion of the tribunal which has to pass upon the subject, whether it be a court or a jury.'" *City of Milwaukee v. Cement Div., Nat.*

---

[7] *See* Dkt. 162-1 (proposed judgment), ¶ 2 (seeking $148,348.55 in prejudgment interest).

*Gypsum Co.*, 515 U.S. 189, 196 (1995) (quoting *The Scotland,* 118 U.S. 507, 518–519 (1886)). Prejudgment interest "may be appropriate when it furthers the Congressional policies of the specific statute and encourages parties to settle disputes 'quickly and fairly, thereby avoiding the expense and difficulty of federal litigation.'" *I.W. by and through Karen K. v. Hardin-Jefferson Independent School District,* Civil Action No. 1:15-CV-332, 2017 WL 5644386, at *20 (E.D. Tex. Jan. 4, 2017) (quoting *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 983 (5th Cir. 1991)). If both conditions are met, "[a] district court has discretion to award prejudgment interest in order to make a plaintiff whole[,]" *id*. (citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 679 (5th Cir. 2015), *cert. denied*, 578 U.S. 959 (2016)), but "not to reward or punish a party…," *id*. (citing *Tow v. Speer*, No. H-11-3700, 2015 WL 1058080, at *15 (S.D. Tex. Mar. 10, 2015). "In exercising its discretion, the trial court should balance the relative equities between the parties." *I.W. by and through Karen K.*, 2017 WL 5644386, at *20 (quoting *Rogers v. United States*, 332 U.S. 371, 373 (1947)). Doe provides this Court nothing on which to base this required analysis.

Doe largely assumes rather than demonstrates entitlement to prejudgment interest. He does not attempt to address the equitable considerations federal law requires the Court to evaluate, explain why an award would advance the purpose of

Title IX, or show why it is necessary to make him whole. His request therefore offers no meaningful basis for the Court to exercise its discretion in his favor.

In any event, Doe applies the wrong interest rate and miscalculates the resulting interest. Those errors independently preclude entry of the prejudgment interest award he seeks.

### 2.    Doe is using the Texas prejudgment interest rate.

Doe's proposed judgment awards prejudgment interest at 6.5%.[8] His Motion and chart request and calculate prejudgment interest at a greater rate—6.75%.[9] He does not explain the discrepancy, or the sources or reasons for either rate. If he is requesting prejudgment interest at 6.75%, Rice University assumes he is asking for the Texas state prejudgment interest rate,[10] which is currently 6.75%.[11]

---

[8] Dkt. 162-1 (proposed judgment), ¶ 2 ("Additionally, the Court awards prejudgment interest on the sum at the annual rate of 6.5%...").

[9] Dkt. 162 (Motion) at 2 ("Additionally, the Court awards prejudgment interest on the sum at the annual rate of 6.75%...").

[10] In Texas, "[p]re-judgment interest accrues at the postjudgment rate for judgments issued by Texas courts, set by the consumer credit commissioner." *Compass Bank v. Villarreal*, Civil Action No. L-10-08, 2012 WL 13046325, at *12 (S.D. Tex. March 13, 2012) (citing TEX. FIN. CODE § 304.003); *see also Tenn. Gas Pipeline Co. v. Technip USA Corp.*, Cause No. 01–06–00535–CV, 2008 WL 3876141, at *24 (Tex. App.—Houston [1st Dist.] August 21, 2008, pet. denied) (calculating pre-judgment interest at rate set by consumer credit commissioner).

[11] *See* Texas Credit Letter, Vol. 45, No. 51, Tex. Off. of Consumer Credit Comm'r (June 17, 2026), https://occc.texas.gov/wp-content/uploads/2026/06/06-17-2026.pdf. The rate will remain the same through August 31, 2026. *See* Texas Credit Letter, Vol. 46, No. 3, Tex. Off. of Consumer Credit Comm'r 1 (July 15, 2026), https://occc.texas.gov/wp-content/uploads/2026/07/07-15-2026.pdf.

### 3. Doe should be using the Federal interest rate.

Although federal courts may use state prejudgment interest rates in state-law cases, *see Tow*, 2015 WL 1058080, at *15, "[f]ederal law governs the issuance of pre-judgment interest for federal claims." *Transitional Learning Cmty v. Metro. Life Ins. Co.*, 913 F. Supp. 504, 508 (S.D. Tex. 1996) (citing *In re Texas General Petroleum Corp.,* 52 F.3d 1330, 1339 (5th Cir.1995)). The federal post-judgment interest rate, dictated by 28 U.S.C. § 1961, is a proper prejudgment interest rate in federal question cases. *See, e.g.*, *Williams v. Trader Pub. Co.*, 218 F.3d 481, 488 (5th Cir. 2000) (noting that "[t]his court previously has approved the imposition of the federal rate of interest in Title VII cases as making a plaintiff whole…").[12] The reason the rates are different is significant. "The federal rate [under 28 U.S.C. § 1961] is based on the rate of investment return while the Texas rate is based on the cost of borrowing." *Aquatic Lodging, LLC v. Bayou Boys Boat Rental, LLC*, Civil Action No. H–10–4161, 2013 WL 12231334, at *4 (S.D. Tex. Nov. 16, 2013) (citing

---

[12] *See also U.S. v. Central Gulf Lines, Inc.*, 974 F.2d 621, 630 (5th Cir. 1992) (finding no abuse of discretion in using of rate in 28 U.S.C. § 1961 as prejudgment interest rate in admiralty case); *EEOC v. Service Temps*, Civil Action No. 3:08–CV–1552–D, 2010 WL 5108733, at *6 (N.D. Tex. Dec. 9, 2010) (awarding federal prime rate, compounded annually, in Title VII case); *Miles-Hickman v. David Powers Homes, Inc.*, Civil Action No. H–07–0754, 2009 WL 1797872, at *1 (S.D. Tex. June 24, 2009) (applying federal rather than Texas state court rate in ADA case where plaintiff offered no reason why Texas rate should be used "when she prevailed on a claim under federal law in federal court"); *cf. "Jack" McBride v. Orion Healthcorp, Inc.*, Civil Action No. 4:14–2944, 2015 WL 12551088, at *11 (S.D. Tex. Dec. 16, 2015) (absent guidance from parties and in light of recent market volatility, "the Court selects the Daily Treasury Bill Rate for a 52–week maturity Treasury Bill [rather than either the Texas rate or the federal § 1961 rate] as the measure of the [prejudgment]  interest rate" in ERISA case).

*Gilbert v. Offshore Prod. & Salvage, Inc.,* No. 95–122, 1998 WL 43136, at *2 (E.D. La. Jan. 30, 1998)). Federal "courts generally award the federal rate, versus the state rate, unless there is evidence the party actually had to borrow money or could not pay off its loans due to its adversary's actions." *Id.* (citing *Central Gulf Lines, Inc.*, 974 F.2d at 631). Despite seeking a state law prejudgment interest rate almost double the federal interest rate, Doe "does not provide any reasons or substantiation as to why the Court should set the interest rate in accordance with Texas law," and "does not argue or provide any evidence [he] actually had to borrow money at the Texas rate or could not pay off loans due to [defendant's] breach." *Aquatic Lodging*, 2013 WL 12231334, at *4.

On July 24, 2026, the federal interest rate under 28 U.S.C. § 1961 was 4.03%.[13] Rice University has used that rate to calculate the prejudgment interest that Doe may recover:[14]

---

[13] Selected Interest Rates (H.15), Bd. of Governors of the Fed. Rsrv. Sys., https://www.federalreserve.gov/releases/h15/ (last visited July 24, 2026).

[14] In addition to the rate, Rice University's calculations (1) prorate lost income in the earnings year based on a twice monthly pay schedule, (2) prorate scholarship benefits based on a January 1 and July 1 receipt schedule, (3) calculate prejudgment interest on the discounted projected earnings for December 2024, all of 2025, and 2026 to date, and (4) prorate all 2026 calculations to April 14, 2026. Rice University uses the April 14, 2026 date because, to the extent he prorated his calculations, that is the date Doe used. *See* Dkt. 162-3 (chart).



**Pre-Judgement Interest Calculation**

Interest Rate  4.03%

| | Lost Scholarship & Earnings | | | | | | | | Prejudgment Interest (Simple Interest) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026* | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026* | Total |
| Scholarship | 45,205 | | | | | | | | 910.88 | 1,821.76 | 1,821.76 | 1,821.76 | 1,821.76 | 1,821.76 | 1,821.76 | 514.09 | 12,355.54 |
| Scholarship | | 90,410 | | | | | | | | 2,732.64 | 3,643.52 | 3,643.52 | 3,643.52 | 3,643.52 | 3,643.52 | 1,028.17 | 21,978.43 |
| Scholarship | | | 90,410 | | | | | | | | 2,732.64 | 3,643.52 | 3,643.52 | 3,643.52 | 3,643.52 | 1,028.17 | 18,334.91 |
| Scholarship | | | | 45,205 | | | | | | | | 1,821.76 | 1,821.76 | 1,821.76 | 1,821.76 | 514.09 | 7,801.13 |
| Earnings | | | | 14,531 | | | | | | | | 135.43 | 585.59 | 585.59 | 585.59 | 165.25 | 2,057.46 |
| Earnings | | | | | 27,044 | | | | | | | | 524.90 | 1,089.86 | 1,089.86 | 307.55 | 3,012.16 |
| Earnings | | | | | | 27,991 | | | | | | | | 543.67 | 1,128.04 | 318.32 | 1,990.03 |
| Earnings | | | | | | | 28,569 | | | | | | | | 554.51 | 324.90 | 879.40 |
| Earnings | | | | | | | | 8,227 | | | | | | | | 40.10 | 40.10 |
| Total | 45,205 | 90,410 | 90,410 | 59,736 | 27,044 | 27,991 | 28,569 | 8,227 | 910.88 | 4,554.40 | 8,197.93 | 11,066.00 | 12,041.06 | 13,149.69 | 14,288.56 | 4,240.63 | 68,449.15 |
| | | | | | | | | * thru 4/14/26 | | | | | | | | * thru 4/14/26 | |

Use of a 4.03% rate is a proper exercise of the Court's discretion in determining prejudgment interest. *See Aquatic Lodging,* 2013 WL 12231334, at *4 ("[I] it is within the district court's discretion to award prejudgment interest at the federal postjudgment interest rate provided for by 28 U.S.C. § 1961…"). The 4.03% rate is also much closer to the 3.44% rate that Doe's expert used to value Doe's future earning capacity as of December 1, 2024.[15] By assuming Doe could only earn 3.44% in interest (and a net 1.21% after subtracting 2.23% to account for inflation) on amounts awarded now as compensation for future damages, Doe's expert increased the amount of money Doe would need to be awarded today to "make him whole"—to put him in the same economic position he would have occupied in the future. Doe benefitted from arguing that he needed more money today to make him whole in the future because he would only earn 3.44% in interest

---

[15] *See* Exhibit 2 (April 8, 2026 Rough Transcript) at 114, l. 4 (expert referencing 3.44% interest rate used in deriving net discount rate for future damages), 115, l. 25-116, l. 7 (expert confirming damage scenario totaling $1,053,217 included future losses discounted to present value), 117, l. 10-118, l. 1 (expert confirming damages calculation scenarios were those on spreadsheets attached to report); *see also* Dkt. 126-2 (Needham Expert Report) at p. 25 of 249 (spreadsheet reflecting Scenario 1 total loss of $1,053,217 calculated using 3.44% interest rate); Dkt. 162-2 (verdict) at 18 (finding loss of earning capacity of $1,053,217).

on money awarded for future damages. He cannot have his cake and eat it too by now telling this Court that making him whole requires paying him 6.75% interest for the loss of use of money he told the jury would only earn half as much.

Doe is not entitled to be made more than whole by collecting prejudgment interest at a rate almost twice that used in calculating his future damages. If prejudgment interest is awarded, the federal 4.03% interest rate should be applied instead.[16]

### 4.    Doe's calculations are faulty.

Even if Doe was using a correct rate, his  prejudgment interest calculations are incorrect. They are reproduced below. Scholarship amounts and interest are yellow. Earnings and interest are blue. The rate is red. The method is purple:[17]



---

[16] Because it fluctuates weekly, *see* 28 U.S.C. § 1961(a) (equating the rate "to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."), when the judgment is entered determines the specific federal rate for calculating prejudgment interest included in it.

[17] Dkt. 162-3 (chart).

### a.  Doe uses the wrong principal amounts.

Doe includes prejudgment interest on $271,230 in loss of scholarship damages (in yellow) that he cannot recover. "Prejudgment interest serves to compensate for the loss of use of money…". *West Virginia v. United States*, 479 U.S. 305, 310  n.2 (1987). Doe's scholarship was not cash he would have ever received. The only use to which it could have been put was funding his Rice University education, the full return on which he has already been awarded in the form of damages for lost earning capacity. Awarding prejudgment interest on funds which Doe never would have actually received and on which he could never have earned any other return would only increase his windfall. Doe also calculates prejudgment interest on the wrong lost income amounts in 2025 and 2026. *See* Part B(4)(b), *infra*.

### b.  Doe uses the wrong timeframes.

Doe alleges his prejudgment interest calculations are "based upon the time frames supporting the Judgment."[18] They are not. He inflates his calculations by seeking prejudgment interest on past amounts before they could have been received, as well as on amounts not yet due.

Doe's chart confirms the simple interest he uses does not compound. Calculating the same amount of interest on allegedly lost wages for the year in which they would have been earned as in every subsequent year wrongly assumes Doe

---

[18] Dkt. 162 (Motion) at 2.

13

would have received them all on the first day of that year rather than earning them over the course of the year. For example, Doe allegedly lost $27,993 of income in 2024.[19] He is seeking a full year of prejudgment interest on that amount— $1,889.51—in 2024.[20] The only way a full year of prejudgment interest could accrue in 2024 on income lost in 2024 is if Doe would have received all $27,993 of that allegedly lost income on January 1, 2024. That, of course, is not how wages work.[21] He makes the same mistake calculating a full year of prejudgment interest on all amounts through 2026.[22] Prejudgment interest cannot have accrued for all of 2026 until 2026 is over and in any event must end on the date that judgment is entered. *See Aquatic Lodging,* 2013 WL 12231334, at *4 (calculating prejudgment interest "until the date of judgment"). Although he cannot recover both, he makes the same two mistakes with his allegedly lost scholarship payments, calculating an initial full year of prejudgment interest on in kind value he would have received over time during that year, and a full year of interest for 2026 before 2026 is over (and

---

[19] Dkt. 162-3 (chart).

[20] *Id.*

[21] Calculating the same amount of interest on Doe's allegedly lost scholarship payments for the year in which they would have been received as in every subsequent year likewise assumes Doe would have received the full amount on the first day of that year rather than never receiving them in hand at all except in kind, and even then over time.

[22] *See id.* (calculating the same $980.83 in interest on his allegedly lost 2022 income each year from 2022 through 2026, the same $1,825.44 in interest on his allegedly lost 2023 income each year from 2023 through 2026, the same $1,889.51 in interest on his allegedly lost 2024 income from 2024 through 2026, and the same $1,953.64 in interest on his allegedly lost 2025 income from 2025 through 2026).

including time after the judgment will be entered).[23] These mistakes improperly inflate his calculations.

Doe's lost earning capacity numbers for 2025 and 2026, on which he calculates prejudgment interest, are also faulty. Those amounts, which come directly from Dr. Needham's Scenario 1 spreadsheet, are Doe's estimated *undiscounted* lost earnings.[24] The jury did not award those amounts. It awarded smaller, discounted present values of those amounts.[25]

Prejudgment interest is discretionary. Doe must persuade this Court to exercise it in his favor. In abdicating that burden, he provides this Court with no legal or reliable factual basis for doing so. Accordingly, this Court should decline to award prejudgment interest. Alternatively, should the Court decide to award pre-judgment interest, it should calculate a proper amount or adopt the calculation provided by Rice University.

---

[23] *See, e.g., id.* (calculating the same $3,051.34 in interest on the portion of his scholarship allegedly lost in 2019 for each year from 2020 through 2026, the same $6,102.68 in interest on the portions of his scholarship allegedly lost in 2020 for each year from 2020 through 2026, the same $6,102.68 in interest on the portions of his scholarship allegedly lost in 2021 for each year from 2021 through 2026, and the same $3,051.34 in interest on the portion of his scholarship allegedly lost in 2022 for each year from 2022 through 2026.

[24] *See* Dkt. 126-2 (Needham Expert Report) at p. 25 of 249. The actual loss amount for 2025 in Doe's interest spreadsheet and in the post-estimate "loss" column of his Scenario 1 damages spreadsheet ($28,943) match exactly. The amount of $8,370 for 2026 is Doe's estimated actual loss through April 14, 2026, prorated on the basis of January 1 through April 14 equaling 28% of the year, rounded to the nearest dollar ($29,892 x .28 = $8,369.76 = $8,370).

[25] *See id.* (amounts in post-estimated loss column totaling $985,889 plus pre-estimate losses of $67,328 equals the $1,053,217 awarded by jury).

## C.   Doe has not met his burden on attorney's fees.

Doe seeks an award of $589,118.22 in attorney's fees.[26] But he has not carried his burden to establish that amount under the lodestar framework. Instead, he  seeks an award equivalent to a 40% contingent fee.[27] Supreme Court precedent makes clear, however, that a statutory fee award must be based on the lodestar method, and not on a lawyer's contingent-fee arrangement with the client.[28]

Because Doe fails at his threshold burden of establishing a proper lodestar amount, his request for attorney's fees should be denied. However, if the Court is inclined to award fees, Doe's requested amount should be significantly reduced because he has failed to meet his burden to (1) establish reasonable rates for attorneys in the community, and (2) provide billing records to prove the reasonableness of hours expended.

### 1.   Doe has the burden of proving both the lodestar amount and any requested enhancements.

"[T]he court, in its discretion, may allow the prevailing party…a reasonable attorney's fee as part of the costs" in a Title IX case. *See* 42 U.S.C. § 1988. The Fifth

---

[26] *See* Dkts. 162 (Motion) at 2, 9; 162-1 (proposed judgment) at 2, ¶ 3.

[27] *See id.* at 9 (requesting "attorney's fees in the amount of $589,118.22, representing 40% of the $1,324,447.00 jury verdict with pre-judgment interest").

[28] Doe's requested fees equal forty percent of the total of his requested damages and prejudgment interest: $271,230 ("loss of scholarship") (Dkt. 162-1 (proposed judgment) at 1, ¶ 1) + $1,053,217 ("loss of earning capacity) (*id.*) + $148,348.55 (prejudgment interest) (*id.* at 1, ¶ 2) = $1,472,118.22 x .4 = $589,118.22 (*id.* at 2, ¶ 3).

Circuit uses the "lodestar method," a two-step process, to calculate this fee. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). The district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer. *Id.* After multiplying these amounts, the district court may adjust the resulting lodestar upward or downward depending on the twelve factors set forth in *Johnson v. George Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[29] *Id.*

"The fee applicant bears the burden of establishing that the number of hours and the hourly rate for which compensation is requested is reasonable." *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). To establish the reasonable number of hours expended, courts "require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Courts have imposed significant reductions where billing entries lack judgment, are vague, incomplete, or reflect impermissible lumping of activities. *See, e.g., Bowman*

---

[29] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

17

*v. Prida Constr., Inc.*, 568 F. Supp. 3d 779, 785-88 (S.D. Tex. 2021) (assessing 40% reduction for lack of billing judgment, redundant and excessive billing, billing travel time at full rates, and billing for clerical work); *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 387-91 (S.D. Tex. 2016) (assessing 50% reduction for inadequate entries, excessive, duplicative, and unnecessary work, and lack of evidence of billing judgment); *Preston Expl. Co., LP v. GSP, LLC*, No. CIV.A. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) (assessing a 20% reduction for lack of billing judgment, vague entries, overstaffing, and billing for clerical work).

Likewise, to establish the reasonable hourly rate, the applicant must submit "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

An applicant may request an enhancement but bears a heavy burden to justify it. Because there is a strong presumption that the lodestar award is the reasonable fee, *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006), the applicant "bears the burden of showing that 'such an adjustment is ***necessary*** to the determination of a reasonable fee,'" *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (emphasis in original). And if the district court decides an

enhancement is warranted, it "'"must explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied."'" *Walker*, 99 F.3d at 771 (quoting *Shipes v. Trinity Indus.*, 987 F.3d 311, 320 (5th Cir. 1993)).

### 2.     Doe has not proven any enhancement.

Doe has not even met his threshold burden to prove the lodestar amount. *See* Part C(3), *infra*. Rather, and without justification, Doe requests 70% more than his improper lodestar calculation because that total would constitute a 40% contingent fee.[30] Thus, Doe asks the Court to enforce his contingent-fee agreement. The Fifth Circuit has made clear that disregarding the lodestar analysis is, standing alone, reversible error. *See, e.g.*, *Haygood v. Morrison*, 116 F.4th 439, 447 (5th Cir. 2024) (remitting the fee award because "[t]he court accepted the word of the state's attorneys and awarded the total amount they said they billed" and "[o]ur precedent does not permit the district court to bypass the lodestar in that way").

And even if Doe's request is interpreted as a request for enhancement of the lodestar amount, he fails to even acknowledge—much less prove—that the *Johnson* factors would support an enhancement. Indeed, they do not. An enhancement here would conflict with Supreme Court precedent regarding the treatment of the sixth

---

[30] Dkt. 162 (Motion) at 9 (asserting that the Court should "award attorney's fees in the amount of $589,118.22, representing 40% of the $1,324,447.00 jury verdict with pre-judgment interest.").

*Johnson* factor—whether the fee is fixed or contingent. *Johnson*, 488 F.2d at 717-19. The Supreme Court has held that enhancing the lodestar upward based on the contingent nature of the case is incompatible with fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 565 (1992) ("And we see a number of reasons for concluding that no contingency enhancement whatever is compatible with the fee-shifting statutes at issue.").

The Fifth Circuit follows this "clearly-lighted path." *Shipes v. Trinity Indus.*, 987 F.2d 311, 322–23 (5th Cir. 1993) (concluding that it was error for the district court to enhance the lodestar amount by 33% based on the contingent nature of the case); *see also Walker*, 99 F.3d at 772 ("The Supreme Court has barred any use of the sixth [*Johnson*] factor."). Because his request directly conflicts with both Supreme Court and Fifth Circuit precedent, Doe's request for enhanced fees should be denied.

### 3.    Doe has not proven the lodestar amount.

Seeking enhanced lodestar fees presumes a legitimate lodestar fee calculation to enhance. But neither the rates nor the hours Doe uses in calculating his alleged lodestar fees of $350,050.73 are reasonable.

#### a.    Doe has not proven reasonable rates.

To establish reasonable rates, Doe points to a 2025 publication by the Texas Employment Lawyers Association, arguing that it "reflects the reasonable and

20

customary rates for civil rights/employment litigation **in and around Texas**."[31] Upon closer inspection, this publication includes the rates of multiple out-of-state attorneys in Los Angeles, Chicago, Boston, Washington, D.C., and San Diego.[32] There are only 5 Houston-based lawyers listed in the 71-page document; these lawyers charge $759.31 per hour, $612.86 per hour, $843.59 per hour, $820.66 per hour, and $325.99 per hour—the average of these rates is more than $200 less than the hourly rate requested for Ms. Hutchison.[33] The Fifth Circuit has "interpreted rates 'prevailing in the community' to mean what it says." *McClain v. Lufkin Indus.*, Inc., 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum*, 465 U.S. at 896 n.11). That is, "district courts are required to consider the local rates for similar work **in the community**." *Bowman v. Prida Constr., Inc.*, 568 F. Supp. 3d 779, 783 (S.D. Tex. 2021) (citation modified) (emphasis added). The "community" necessarily excludes out-of-state attorneys and attorneys in other Texas cities. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 754 (S.D. Tex. 2008) ("The relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere."). Doe has not met his burden to show that "the hourly rate for which compensation is requested is reasonable." *Riley*, 99 F.3d at 760. And,

---

[31] Dkt. 162 (Motion) at 4 (emphasis added); *see also* Dkt. 162-5 (rate list).

[32] Dkt. 162-5 (rate list) at 5, 6, 12, 13, 15, 16, 25, 26, 50, 51, 56, 59, 62.

[33] *Id.* at 20, 24, 35, 53, 70.

even if the rates for the five Houston-area lawyers are sufficient to show the community rate, an average of those rates is $627.48, which should serve as the cap for rates here, significantly lowering Doe's lodestar calculation.[34]

### b.     Doe has not proven reasonable hours.

Establishing the reasonable hours by which to multiply reasonable rates requires "[p]laintiffs…[to] provide billing statements with enough information for the court to discern which fees are reasonably expended and which are not." *Rouse*, 181 F. Supp. 3d at 387-88. The records must allow "the Court to determine whether the time claimed is reasonable for the services provided, whether the time claimed related to tasks for which plaintiff cannot recover, or whether it is duplicative of other time claimed." *Rouse*, 181 F. Supp. 3d at 388. "Bare descriptions, without any reference to content or purpose, do not demonstrate that the services were necessary and that the amount of time expended was reasonable." *Humphrey v. United Way of the Texas Gulf Coast*, 802 F.Supp.2d 847, 865 n.25 (S.D. Tex. 2011). "[E]ntries that conflate numerous activities into a single entry…fail to satisfy the criteria for supporting an attorneys' fee application." *Rouse*, 181 F. Supp. 3d at 388 (citing *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998)).

---

[34] The rate Doe requests for Hutchison exceeds $627.48 and should be reduced. The rates for other attorneys do not exceed that cap, and Rice University does not contest their reasonableness.

"Purely clerical or secretarial tasks should not be billed at a paralegal rate," let alone an attorney rate, "regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). "Work completed by a paralegal may only be recovered if it is similar to the work typically completed by attorneys; 'otherwise, it is an unrecoverable overhead cost.'" *Cty. of Dimmit v. Helmerich & Payne Int'l Drilling Co.*, No. SA-16-CV-01049-RCL, 2018 WL 1095585, at *3 (W.D. Tex. Feb. 27, 2018) (quoting *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982)). Legal tasks that may be performed by a paralegal and billed accordingly include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri*, 491 U.S. at 288 n.10. Clerical work, or secretarial tasks, include the "filing of legal documents, the calendaring of events, and communications regarding scheduling issues." *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-00371, 2018 WL 1602460, at *5 (E.D. Tex. Apr. 3, 2018); *see also Lewallen v. City of Beaumont*, No. CIV.A.1:05-CV-733TH, 2009 WL 2175637, at *6 (E.D. Tex. July 20, 2009) (finding that basic communications and case organization are "largely clerical or housekeeping matters and not legal work"), *aff'd*, 394 Fed. App'x 38 (5th Cir. 2010) (citation omitted). Preparing, assembling, and redacting documents and exhibits, including affixing labels, are likewise

23

clerical. *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *8 (N.D. Tex. Feb. 11, 2011).

"Plaintiffs submitting fee requests are required to exercise billing judgment, which 'refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours.'" *Bowman*, 568 F. Supp. 3d at 784 (quoting *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996)). "'[A]ttorneys 'should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary.'" *Rouse*, 181 F. Supp. 3d at 388 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). To that end, "[t]he plaintiff must present 'documentation of the hours charged' and of those 'written off as unproductive, excessive, or redundant.'" *Id*. (quoting *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). "The plaintiff's failure to present credible evidence of writing off 'unproductive, excessive, or redundant hours' is sufficient to establish a lack of billing judgment...". *Id*. (quoting *Walker*, 99 F.3d at 769-70). Importantly, "[t]he Fifth Circuit has repeatedly determined that bald assertions regarding the exercise of billing judgment are insufficient." *Fralick*, 2011 WL 487754, at *8. Closely related to, if not a part of, exercising billing judgment is the rule that "[i]n this Circuit, time spent traveling should be billed at a lesser rate than active legal work." *Bowman*, 568 F. Supp. 3d at 785-86 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); see also *Hopwood v. State of Texas*, 236

F.3d 256, 263 (5th Cir. 2000) (affirming reduction of travel hours by one-half); *In re Babcock & Wilcox Co.*, 526 F.3d 824, 829 (5th Cir. 2008) (same).

Doe has submitted 40 pages of billing records.[35] They do not meet the required criteria.[36]

### i.    Doe's records are incomplete.

First, Doe's time records seem incomplete. For example, his records show a maximum of 45 minutes spent on his 33 page Original Complaint, none of it by a lawyer.[37] No time is recorded reflecting the motion to transfer venue Rice University filed and won.[38] The resulting lack of context makes it difficult for this Court to determine whether the fees Doe is seeking are reasonable.

### ii.    Doe fails to prove billing judgment.

Doe's missing documentation prevents him from demonstrating that his counsel exercised billing judgment. Billing judgment is proved by presenting "'documentation of the hours charged' and of those 'written off as unproductive, excessive, or redundant.'" *Rouse*, 181 F. Supp. 3d at 388 (quoting *Saizan*, 448 F.3d

---

[35] Dkt. 162-4 (billing records).

[36] Rice University is providing examples rather than a comprehensive inventory of Doe's insufficient proof.

[37] *See* Dkt. 162-4 (billing records) at 1 (September 11, 2019 paralegal entry of .75 hours including "Finaliz[ing] Complaint"); *see also* Dkt. 1 (Original Complaint).

[38] *See id.*, *passim*.

at 799). "[B]ald assertions regarding the exercise of billing judgment are insufficient." *Fralick*, 2011 WL 487754, at *8.

Doe's billing records do not show the exercise of billing judgment. To the contrary, he includes every single hour in those records in his lodestar calculation. He asserts that duplicative time was removed, and other time spent was not recorded or included.[39] But the Fifth Circuit has held that such an assertion *cannot* prove that counsel exercised billing judgment.

Indeed, these facts mirror *Bowman*, where "[t]he plaintiff's original billing entries contain no hours written off as unproductive, excessive, or redundant," and "there were no hours written off as uncharged." *Bowman*, 568 F. Supp. 3d at 785. That failure is "sufficient to establish a lack of billing judgment…". *Id*. As in *Bowman*, asserting that the time submitted demonstrates billing judgment because Doe is not seeking to recover fees for time not recorded is not sufficient. *See id*. at 785 n.2 (finding lack of billing judgment despite counsel claiming he "'did not bill a substantial amount of the time spent in this case,' instead opting to reduce the number of hours billed as recorded on the…time entries"). Eliminating redundant

---

[39] *See* Dkts. 162 (Motion) at 7 (asserting apparently duplicative entries were removed and other time was not recorded), 162-6 (Hutchison Aff.) at 4 (same).

26

tasks is also part of billing judgment. *Rouse*, 181 F. Supp. 3d at 388. Doe has failed to do that as well.[40] In sum, Doe has failed to meet his burden.

### iii.    Doe's records are vague.

"Bare descriptions, without any reference to content or purpose, do not demonstrate that the services were necessary and that the amount of time expended was reasonable." *Humphrey*, 802 F.Supp.2d at 865 n.25. Many of Doe's entries are exactly that.[41] Indeed, one of his counsel's entries for each trial day, in their entirety, are: "Trial Day 1" through "Trial Day 6."[42] The fees sought for those six days for that one lawyer are $32,875. Doe is seeking $4,394.55 for five hours of work done on June 17, 2026 described as "Depo Hanna Stotland" with no explanation of what "Depo Hanna Stotland" means, or how or why five hours of whatever "Depo Hanna Stotland" is was reasonable and necessary more than two months *after* the trial concluded.[43] Doe is also seeking recovery of six hours of Mr. Bristow's time on July 21, 2025 for "mediation" and 15.25 hours that same day for "[c]ommunications."[44]

---

[40] *See*, *e.g.*, Dkt. 162-4 (billing records) at 4 (preparing same document template on January 21 and February 10, 2020).

[41] *See*, *e.g.*, *id*. at 34 (April 1 entry for "Trial Presentation Prep"), 35 (April 2 entry for "Trial Prep Continued," April 3 entry for "Trial Prep Part 3").

[42] *Id*. at 36-39.

[43] *Id*. at 39.

[44] *Id*. at 27.

At $500/hr., the fees for that one 21.25 hour day total $10,625. The fees sought for these eight days alone total $47,894.55—almost 15% of his lodestar calculation.

### iv. Doe is seeking to recover clerical time.

Clerical time—including "filing of legal documents, the calendaring of events, and communications regarding scheduling issues"—is not recoverable. *Samsung*, 2018 WL 1602460, at *5. The first five pages of Doe's records alone show at least 12 entries for unrecoverable clerical tasks.[45] More follow, including time entries for finding and booking hotel accommodations for attorneys.[46]

### v. Doe conflates tasks.

Time entries conflating tasks "fail to satisfy the criteria for supporting an attorneys' fee application." *Rouse*, 181 F. Supp. 3d at 388. Doe's billing records are replete with such entries.[47]

### vi. Doe is seeking full rates for some travel time, and discounted fees for apparently excessive travel time.

"[T]ime spent traveling should be billed at a lesser rate than active legal work." *Bowman*, 568 F. Supp. 3d at 785-86. Doe seeks Ms. Hutchison's travel time

---

[45] *See, e.g., id.* at 1 (filing), 2 (filing, calendaring, docketing, and emailing documents), 3 (calendaring, copying client, and filing), 4 (emailing document), 5 (filing, emailing, and bates stamping documents).

[46] *Id*. at 27 (July 19, 2025 entry), 37 (April 10, 2026 entry).

[47] *See, e.g., id*. at 1 (single entry for finalizing and filing complaint), 2 (single entry for preparing documents, mailing documents, filing documents, and docketing dates), 3 (single entry for finalizing and filing document), 4 (single entry for researching magistrates and preparing document templates), 5 (single dentry for finalizing and filing document).

28

at her full $878.91/hr. rate.[48] He is seeking Mr. Bristow's travel time at a discounted rate of $300/hr., but fails to explain how or why 11.25 hours and the resulting fees of $3,375 were required on April 5, 2026 for "Trial Travel" when Ms. Hutchison made the presumably same trip from Fort Worth to Houston four days earlier in four and a half hours.[49]

### 4. Doe's lodestar fees, if awarded at all, should be reduced.

The Court in *Bowman* eventually reduced the plaintiff's lodestar calculation by 40% for the kinds of deficiencies from which Doe's submission suffers. *See Bowman*, 568 F. Supp. 3d at 787 ("The court finds a 40% reduction to be…reasonable, accounting for the lack of billing judgment, the excessive and duplicative entries, and for billing clerical work."). If the Court awards fees at all, a proper lodestar amount should be similarly reduced by 40% to account for the deficiencies in his proof.

### D. Doe omits the statutory basis for post-judgment interest.

Doe's proposed judgment states that "[p]ostjudgment interest is payable on all of the above amounts allowable by law at the rate of ___, from the date this judgment is entered until the date this judgment is paid."[50] As with his request for

---

[48] *See id*. at 34 (April 1, 2026 entry for 4.5 travel hours at $878.91/hr., totaling $3,955.10), 39 (identical entry on April 15).

[49] *Id*. at 34 (April 1 Hutchison entry), 35 (April 5 Bristow entry).

[50] Dkt. 162-1 (proposed judgment) at 2, ¶ 4.

prejudgment interest, Doe does not provide this Court any information about the applicable rate—or where to find it—when it begins, when it ends, or how it is computed.[51]

"Interest shall be allowed on any money judgment in a civil case recovered in district court," 28 U.S.C. § 1961(a), whether the judgment is based on federal or state law. *Tricon Energy Ltd. Vinmar Int'l, Ltd.*, 713 F.3d 448, 456 (5th Cir. 2013) ("Federal law governs postjudgment interest in federal cases, including diversity cases"); *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) ("Federal law governs post-judgment interest"). An award of postjudgment interest under 28 U.S.C. § 1961 is mandatory. *Tricon Energy*, 718 F.3d at 456-57 ("Postjudgment interest is not discretionary...."); *Fogleman*, 607 F.3d at 173 (citing *Reeves v. Int'l Tel. & Tel. Corp.*, 705 F.2d 750, 752 (5th Cir. 1983)). "Such interest shall be calculated from the date of the entry of the judgment, at the rate equal to the weekly average one-year constant maturity Treasury yield." 28 U.S.C. § 1961(a). "Interest shall be computed daily to the date of payment…and shall be compounded annually." 28 U.S.C. § 1961(b). As noted above,[52] because it fluctuates, determining the proper post-judgment interest rate for inclusion in the judgment must await its entry.

---

[51] *See* Dkt. 162 (Motion), *passim*.

[52] *See* n.16, *ante*.

## CONCLUSION AND PRAYER

For these reasons, Rice University opposes entry of the judgment Doe has proposed. Rice further seeks all other legal, equitable, general, and special relief to which it may be entitled.

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES, LLP**

*/s/ Russell Hardin, Jr.*
Russell Hardin, Jr.
State Bar No. 08972800
Federal I.D. No. 19424
rhardin@rustyhardin.com
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

**ATTORNEY-IN-CHARGE FOR DEFENDANT
WILLIAM MARSH RICE UNIVERSITY**

**OF COUNSEL:**
Terry D. Kernell
State Bar No. 11339020
Federal I.D. No. 15074
tkernell@rustyhardin.com
Emily M. Smith
State Bar No. 24083876
Federal I.D. No. 18906776
esmith@rustyhardin.com
**RUSTY HARDIN & ASSOCIATES, LLP**
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010

31

Telephone: (713) 652-9000
Facsimile: (713) 652-9800

Wallace B. Jefferson
Federal I.D. No. 14406
wjefferson@adjtlaw.com
Amy Warr
Federal I.D. No. 3981099
awarr@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
100 Congress Avenue, Suite 1450
Austin, Texas 78701-2709
Telephone: (512) 482-9300
Facsimile:   (512) 482-9303

Barbara B. DePeña
Federal I.D. No. 3641908
bdepena@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
1844 Harvard Street
Houston, Texas 77008-4342
Telephone: (713) 523-2358
Facsimile:   (713) 522-4553

**ATTORNEYS FOR DEFENDANT**
**WILLIAM MARSH RICE UNIVERSITY**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties.

*/s/ Terry Kernell*
Terry Kernell

32